UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 23 P 2: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

MARY DESMOND, THOMAS ZIOBROWSKI, )
PAUL WATTS on their own behalf and on )
behalf of other participants in the defendant ERISA )
Plans )
)
**Plaintiffs**, )
)
v. )
)
MORTON C. BATT, ANTHONY L. SCIALABBA,)
CITISTREET, LLC, WHITE & WILLIAMS, LLP, )
SCIALABBA & MORRISON, P.C., )
ANTHONY L. SCIALABBA & ASSOCIATES, )
P.C. )
THE STANDARD AUTOMOTIVE 401(K) PLAN,)
THE STANDARD AUTOMOTIVE EMPLOYER )
CONTRIBUTION PLAN, )
**Defendants**. )
)

05 cv 10355 NG

Civil Action No. _____

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

### Introduction

Plaintiffs bring this action on behalf of all the participants in the Standard Automotive Corporation 401(k) Plan and Employer Contribution Plan (the "Plans") because – for well over two years – the Participants in these Plans have been denied the right to "roll over" their Plan accounts to their new employer's 401(k) Plan. During this period, the fiduciaries of the Plans and the service providers to the Plan have enriched themselves at the expense of Plan participants. The excessive and unreasonable fees charged to the Plans have consumed approximately one-third of the retirement savings of Plan participants since the defendant trustees and administrators, Scialabba and Batt, first took control of the Plans in January 2003.

The requested preliminary injunctive relief is necessary so that the trustees do not continue to expend Plan participants' retirement savings on excessive, unreasonable and unnecessary fees, causing irreparable harm to Plan participants and violating the letter and spirit of ERISA protections.

## Factual Background

1. Plaintiffs are employed at a facility located in Westminster, Massachusetts that specializes in the fabrication and machining of large metal constructs for industry, defense and aerospace applications. Over the past several years, the facility has had between 100 and 150 employees. Three corporate entities have owned the facility. Prior to 1998, the facility was owned by Ranor, Incorporated ("Old Ranor"). Old Ranor maintained a 401(k) savings plan for its employees. <u>Affidavit of Mary Desmond dated February 22, 2005</u> ( hereinafter "Desmond Aff."), ¶ 2

2. On or about June, 1999, the facility was sold to Standard Automotive Corporation. Most employees of Old Ranor "rolled over" their Old Ranor 401(k) account balances into Standard Automotive Corporation's 401(k) Savings Plan (the "Plan"). *Desmond Aff.*, ¶ 3.

3. On or about March, 2002, Standard Automotive Corporation filed for bankruptcy protection. Then, on August 7, 2002, the facility was sold with bankruptcy court approval to Ranor, Inc. ("New Ranor"). As of August 7, 2002, the employees at the facility ceased being employees of Standard Automotive Corporation and became employees of New Ranor. *Desmond Aff.*, ¶ 4.

4. New Ranor set up a 401(k) savings plan for employees and on about November

18, 2002 (some twenty-eight months ago), Plan participants sent the Plan administrator properly executed distribution forms for about fifty-seven (57) Plan participants requesting that their saving account balances be "rolled over" into the New Ranor 401(k) Plan. Despite numerous communications, Plan participants have been unable to roll over their 401(k) account balances until this date. *Desmond Aff.*, ¶ 5 & Exhibit 1

5. In or about January 2003, defendant Anthony L. Scialabba announced to the Plan participants that he was the new Plan administrator and trustee and would expeditiously move to terminate the Plan and make distributions. *Desmond Aff.*, ¶ 6-8 & Exhibits 2-4.

6. Plan participants became concerned with the long delay and formed a committee to request information from Defendant Scialabba. Defendant Scialabba did not adequately respond to their requests for information, delay continued and substantial amounts began to be deducted from Participants retirement savings accounts. *Desmond Aff.*, ¶¶ 9-11 & Exhibits 5-8.

7. On or about February 27, 2004, Plan participants received a memorandum from Morton C. Batt indicating that he had been appointed to act as trustee and plan administrator of the Plan as of December 9, 2003. Plan participants are unaware of who Mr. Batt is, or what his qualifications are to act as a plan administrator. Plan participants received a number of very similar memoranda from Defendant Batt throughout 2004 essentially blaming the delay in distribtution on the Plan custodian, CitiStreet LLC. These memoranda are very similar to each other and to the memoranda previously received from Defendant Scialabba. *Desmond Aff.*, ¶¶ 12-15 and Exhibits 9-13.

8. Quarterly statements issued to Plan participants since January 1, 2003 illustrate that the following percentages of thei 401(k) Plan accounts have been deducted for

administrative fees in each of the following quarters:

| Quarter ending | Percentage of 401(k) account taken as fees |
|---|---|
| 3/31/2003 | 9.73% |
| 6/30/2003 | 3.26% |
| 9/30/2003 | .21% |
| 12/31/2003 | 3.75% |
| 3/31/2004 | 3.25% |
| 6/30/2004 | 3.61% |
| 9/30/2004 | 3.09% |
| 12/31/2004 | 7.03% |
| **Total** | **33.93%** |

*Desmond Aff.* ¶ 16 & Exhibit 14..

9.     Based on information received from CitiStreet in January 2003, the Plan had a balance of approximately $2,300,000 at that time. Thus, it appears that over $700,000 have been withdrawn from the Plan for administrative fees in just two years without any benefit having been conferred on Plan participants. On January 21, 2004, participants sent an e-mail to Morton Batt requesting an explanation of fees and expenses. Mr. Batt did not respond to all of the participants questions but he did indicate that the following amounts were paid from the Plan **during 2004 alone**: $256,933.21 to Anthony L. Scialabba and Associates (the firm of the former trustee); $75,000 to White & Williams; $23,286.70 to Morton Batt. *Desmond Aff.*, ¶¶ 17-18 & Exhibit 15.

10.    Termination of the Plan and distribution of all assets should have taken approximately six (6) months. <u>Affidavit of W. Terrence Jones, Esq. dated February 22, 2005,</u> (hereinafter "Jones Aff."), ¶ 9.

11.    Reasonable administrative fees for administering and terminating the Plans (excluding record keeping fees for CitiStreet) for the entire period from November 2002 until the

present should not have exceeded $35,000. *Jones Aff.*, ¶¶ 10 & 11. As such, the $358,871.41 incurred by the Plan **in 2004 alone** exceeded reasonable fees by at least $325,000. *Jones Aff.*, ¶ 10. It appears the over $700,000 in unreasonable fees have been taken from the Plans since Anthony Scialabba became trustee in January 2003. *Id.*

### Legal Standard

To justify the issuance of a temporary restraining order and preliminary injunction under Federal Rule Civ. Procedure 65, the Plaintiffs must show: (1) "a substantial likelihood of success on the merits"; (2) "a significant risk of irreparable harm if the injunction is withheld"; (3) "a favorable balance of hardships"; and (4) "a fit (or at least, a lack of friction) between the injunction and the public interest." Equal Employment Opportunity Comm'n v. Astra USA, Inc., 94 F.3d 738, 743 (1st Cir. 1996)(citations omitted).

In this ERISA action, Plaintiffs have shown that they are likely to succeed on the merits, that there is a significant risk of irreparable harm should the requested injunctive relief not be granted, that the balance of hardships favors the requested injunction and that the requested injunction promotes the public interest.

### Argument

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR ACTION FOR VIOLATIONS OF ERISA

ERISA requires that a fiduciary:

discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and: (A) for the exclusive purpose of providing benefits to participants and their beneficiaries and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims; . . .

ERISA § 404(a)(1); 29 USC 1104(a)(1).  As an important part of these duties, fiduciaries cannot pay unreasonable compensation to themselves or others from Plan assets.  *See* ERISA § 406; 29 USC § 1106 *and* ERISA § 408(b)(2); 29 USC § 1108(b)(2)(fiduciary can only contract for services to plan "if no more than reasonable compensation is paid therefor").  Fiduciaries are personally liable for any breaches of their duties to Plan participant.  ERISA § 409; 29 USC § 1109.

In light of this black letter ERISA law, and the facts set forth above and in the affidavits of Mary Desmond and W. Terrence Jones, Esq., Plaintiffs have shown a clear likelihood of success on the merits.  Plaintiffs can show that the Plan fiduciaries including Scialabba, Batt and CitiStreet paid (or permitted to be paid ) from the Plans compensation to service providers that far exceeded reasonable rates.  The fact that CitiStreet may be a 'directed trustee' does not exempt it from liability.  *See* Kling v. Fidelity Management Trust Co., 323 F.Supp.2d 132, 148 (D.Mass 2004)(directed trustee may be liable for following directions which violate ERISA); In re Enron Corp. Securities, Derivative and Litg, 284 F. Supp. 2d 511, 581-602 (S.D. Tex 2003)(same)

With respect to the defendant service providers, White & Williams LLP and Defendant Scialabba's two law firms, ERISA provides a cause of action against such service providers or "parties in interest" for restitution of unreasonable fees paid to them in violation of ERISA § 406.  *See* Nieto v. Ecker, 845 F.2d 868, 873-74 (9th Cir. 1988); Reich v. Rowe, 20 F.3d 25 (1st Cir. 1994).

As such, Plaintiffs have shown a likelihood of success on the merits that would justify

issuance of the requested injunction

## II. PLAINTIFFS WILL INCUR A SUBSTANTIAL RISK OF IRREPARABLE HARM SHOULD THE INJUNCTION NOT BE GRANTED

If the requested injunction is not issued, Defendant fiduciaries will be free to continue using the retirement savings of Plan participants to pay unreasonable and excessive compensation to themselves and others. It is not clear whether defendants will be able to make restitution to the Plans. Hence, Plaintiffs and other Plan participants may continue to lose savings intended and required for retirement.

This loss of retirement savings is sufficient evidence of irreparable harm to justify issuance of the requested injunction.

## III. A BALANCING OF HARDSHIPS FAVORS ISSUANCE OF THE INJUNCTION.

As set forth in Point II, Plaintiffs will suffer extreme hardship if the requested injunction is not granted. In contrast, the Defendants will suffer no harm. It is not the Defendants' retirement funds that is at risk in this litigation, but those of the Plan participants.

## IV. THERE IS A FIT BETWEEN THE REQUESTED INJUNCTION THE PUBLIC INTEREST.

The requested injunction serves the public interest and promotes the important public policy set forth in ERISA – the protection of workers' retirement benefits.[1]

---

[1] In fact, because injunction promotes the public interest, the Court should waive the posting of a security bond by Plaintiffs. The First Circuit permits this Court to dispense with the security bond in "suits to enforce important federal rights or public interests." Crowley v. Local No. 82 Furniture & Piano Mover, 679 F.2d 978, 100 (1st Cir. 1982, rev'd on other grounds, 467 U.S. 526, (1984); Westfield High School LIFE Club v. City of Westfield, 249 F.Supp.2d 98, 129 (D.Mass. 2003)(same); Roth v. Bank of the Commonwealth, 583 F.2d 527, 539 (6th Cir. 1978) (district court has discretion to require no bond be posted for preliminary injunction); Schalk v. Teledyne, Inc., 751 F. Supp. 1261 (E.D. Mich. 1990) (same)

## Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that the Court issue the requested temporary restraining order and, after hearing, issue the requested injunction.

Plaintiffs,

By their attorneys,

Thomas P. Smith (BBO #555513)
Matthew A. Caffrey (BBO #558901)
CAFFREY & SMITH, P.C.
300 Essex Street
Lawrence, MA 01840
Telephone: (978) 686-6151
Telecopy: (978) 686-3399

Dated: February 23, 2005