UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 23  P 2: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| MARY DESMOND, THOMAS ZIOBROWSKI, PAUL WATTS on their own behalf and on behalf of other participants in the defendant ERISA Plans<br><br>**Plaintiffs,**<br><br>v.<br><br>MORTON C. BATT, ANTHONY L. SCIALABBA, CITISTREET, LLC, WHITE & WILLIAMS, LLP, SCIALABBA & MORRISON, P.C., ANTHONY L. SCIALABBA & ASSOCIATES, P.C.<br>THE STANDARD AUTOMOTIVE 401(K) PLAN, THE STANDARD AUTOMOTIVE EMPLOYER CONTRIBUTION PLAN,<br>**Defendants.** | **05** CV **1 0 3 5 5  NG**<br><br>Civil Action No. _____ |

## AFFIDAVIT OF MARY DESMOND

I, Mary Desmond, depose and state as follows:

1.     I reside at 124 Lincoln Avenue, Winchendon, Massachusetts. I make this affidavit upon personal knowledge and in support of Plaintiffs' Motions for a Preliminary Injunction and for Expedited Discovery.

2.     Since June, 1998, I have been employed at a facility located in Westminster, Massachusetts that specializes in the fabrication and machining of large metal constructs for industry, defense and aerospace applications. I have held the positions of accountant, controller and, now, chief financial officer, at the facility. During that time, the facility has had between 100 and 150 employees. Three corporate entities have owned the facility. Prior to 1998, the facility was owned by Ranor, Incorporated ("Old Ranor"). Old Ranor maintained a 401(k)

savings plan for its employees.

3.    On or about June, 1999, the facility was sold to Standard Automotive Corporation. Most employees of Old Ranor, myself included, "rolled over" our Old Ranor 401(k) account balances into Standard Automotive Corporation's 401(k) Savings Plan (the "Plan").

4.    On or about March, 2002, Standard Automotive Corporation filed for bankruptcy protection. Then, on August 7, 2002, the facility was sold with bankruptcy court approval to Ranor, Inc. ("New Ranor"). As of August 7, 2002, the employees at the facility ceased being employees of Standard Automotive Corporation and became employees of New Ranor.

5.    New Ranor set up a 401(k) savings plan for employees and on about November 18, 2002 (some twenty-eight months ago), I sent to the Plan's then administrator properly executed distribution forms for about  fifty-seven (57) Plan participants requesting that their saving account balances be "rolled over" into the New Ranor 401(k) Plan.   I then began a series of communications through November 2002, December 2002 and January 2003 attempting to determine the status of the transfer request and the reason for the delay.   Attached as Exhibit 1 hereto are true and correct copies of e-mails I sent and received.   To this day, Plan participants have not been permitted to roll over our account balances.

6.    I was informed that the new trustee was Anthony L. Scialabba.  I sent Mr. Scialabba an e-mail on January 2, 2003 informing him of the transfer request and requesting an update. A true and correct copy of the e-mail is attached as Exhibit 2.  Mr. Scialabba was very unresponsive to my inquiries, and most of my phone messages to him went unreturned.

7.    On or about January 17, 2003, I received a copy of the letter attached as Exhibit 3

- 2 -

informing me that Mr. Scialabba's firm was counsel to the Plan and was working on terminating the Plan and distributing assets.

8.    On or about March 5, 2003, I received a memorandum from Mr. Scialabba indicating that he was trustee and plan administrator of the Plan. A true and correct copy is attached as Exhibit 4.

9.    I and other concerned employees of New Ranor formed a committee to deal with the unexplained delay in the distribution of our funds. On or about March 28, 2003, Paul Watts, a member of the committee, sent a certified letter to Mr. Scialabba requesting certain information. A true and correct copy is attached as Exhibit 5. Mr. Scialabba never made any satisfactory response to this inquiry.

10.    Mr. Scialabba, and an associate in his office named Noelle White did contact me because on the issue of 401(k) loan balances that were outstanding to Plan participants. They said that these loans be repaid immediately to the Plan or that Plan participants with loans would have "deemed income." The involved participants repaid these loans (totaling some $72,843) on April 1, 2003. A true and correct copy of the repayment instructions are attached as Exhibit 6.

11.    On or about April 2003, after receiving our 401(k) statements for the first quarter 2003 indicating that almost 10% of participant's 401(k) balances had been deducted for fees, I called Mr. Scialabba's office to speak with him regarding the large deduction. In response, I received a letter from him on or about May 1, 2003. A true and correct copy is attached hereto as Exhibit 7. I responded to this letter by e-mail dated May 2, 2003, but never received the detailed information I requested. A true and correct copy of the e-mail is attached hereto as Exhibit 8.

12.    On or about February 27, 2004, I received a memorandum from Morton C. Batt

indicating that he had been appointed to act as trustee and plan administrator of the Plan as of December 9, 2003. A true and correct copy of the memorandum is attached hereto as Exhibit 9. I am unaware of who Mr. Batt is, or what his qualifications are to act as a plan administrator.

13. On or about April 2, 2004, I received another memorandum from Mr. Batt to Plan participants. A true and correct copy of the memorandum is attached hereto as Exhibit 10. On or about June 28, 2004, I received another memorandum from Mr. Batt to Plan participants. A true and correct copy of the memorandum is attached as Exhibit 11.

14. On or about October 6, 2004, Tom Ziobrowski (another member of the committee of New Ranor employees) received a fax from Mr. Batt. A true and correct copy of the letter is attached as Exhibit 12.

15. On or about November 24, 2004, I received another memorandum from Mr. Batt to Plan participants. A true and correct copy of the memorandum is attached as Exhibit 13.

16. I attach true and correct copies of my quarterly statements received from the Plan since January 1, 2003 as Exhibit 14. These statements illustrate that the following percentages of my 401(k) Plan account have been deducted for fees in each of the following quarters:

| Quarter ending | Percentage of 401(k) account taken as fees |
|---|---|
| 3/31/2003 | 9.73% |
| 6/30/2003 | 3.26% |
| 9/30/2003 | .21% |
| 12/31/2003 | 3.75% |
| 3/31/2004 | 3.25% |
| 6/30/2004 | 3.61% |
| 9/30/2004 | 3.09% |
| 12/31/2004 | 7.03% |
| Total | 33.93% |

Looked at another way, my starting 401(k) balance on January 1, 2003 was $11,697.40. From

that, $3,631.34 - or 31% --has been deducted for administrative expenses. A review of the account statements of various other Plan participants demonstrates that similar percentages have been withdrawn.

17.     Based on information received from CitiStreet, the Plan had a balance of approximately $2,300,000 in January 2003. Thus, it appears that over $700,000 have been withdrawn from the Plan for administrative fees in just two years without any benefit having been conferred on me or the other Plan participants.

18.     On January 21, 2004, Tom Ziobrowski, Paul Watts and I sent an e-mail to Morton Batt requesting an explanation of fees and expenses. Mr. Batt did not respond to all of our questions but he did indicate that the following amounts were paid from the Plan during 2004 alone: $256,933.21 to Anthony L. Scialabba and Associates (the firm of the former trustee); $75,000 to White & Williams; $23,286.70 to Morton Batt. A true and correct copy of the e-mail is attached as Exhibit 15.

19.     I, and the other Plan participants, rely on the 401(k) Plan accounts for retirement security. We will suffer irreparable harm should the trustees and those acting with them be permitted to continue treating our retirement savings in the fashion they have for over two years.

Signed under the penalties of perjury on this 11 day of February, 2005.

Mary Desmond

- 5 -

**Mary Desmond**

**From:**     Mary Desmond [desmondm@ranor.com]
**Sent:**     Monday, November 18, 2002 5:05 PM
**To:**       Larry Dunn
**Subject:**  401K

401k letter for       New 401K
transfer of fu...      Rollover.xls

Larry,

Attached is a letter and an excel spread sheet that need to be printed on your letterhead
and sent to Citistreet to get the funds transfer going.  Please let me know if you need
any other information to send this on for me.

Thanks
Mary

P.S.  Could you send me a note to let me know when you sent it on so I can follow up...

1

**Mary Desmond**

| | |
|---|---|
| **From:** | Larry Dunn [LDunn@StandardAuto.com] |
| **Sent:** | Wednesday, November 20, 2002 8:20 AM |
| **To:** | 'Mary Desmond' |
| **Subject:** | RE: |

Mary

Please contact Matt. He is handling this.

Larry

-----Original Message-----
From: Mary Desmond [mailto:desmondm@ranor.com]
Sent: Wednesday, November 20, 2002 8:20 AM
To: Larry Dunn
Subject:

Hi Larry,

I was just wondering if you had a chance to send that letter to citistreet yet.

Thanks
Mary

## Mary Desmond

| | |
|---|---|
| **From:** | MatthewBurris@aol.com |
| **Sent:** | Monday, November 25, 2002 11:12 AM |
| **To:** | desmondm@ranor.com |
| **Cc:** | ldunn@standardauto.com |

**Subject:** 401K $$$s

Mary:

The transition to the new Trustee is already underway. So, once all documents have been filed etc, the trustee can act on Ranor's request. I will forward it to them.

I expect this all to be completed and effective on Dec. 1st.

Matt

## Mary Desmond

**From:**    Mary Desmond [desmondm@ranor.com]
**Sent:**    Friday, December 06, 2002 4:02 PM
**To:**      Matthew Burris

Hi Matt,

I was just wondering if anything had happened yet with the 401k transfer?

Also, I've been waiting to close the old account at IC credit union but the check that we cut to the lawyers is still outstanding...  any thoughts?

Mary

1

## Mary Desmond

**From:** Mary Desmond [desmondm@ranor.com]
**Sent:** Monday, December 16, 2002 9:10 AM
**To:** Matthew Burris
**Subject:** 401k

Matt,

Any word yet on the transfer?

Thanks
Mary

**Mary Desmond**

**From:** MatthewBurris@aol.com
**Sent:** Monday, December 16, 2002 9:38 AM
**To:** desmondm@ranor.com
**Subject:** Re: 401k

Mary:

Transfer to new Trustee is done.  I have passed on your request from earlier and asked that they contact you.
I assume from your email that they have not, so I sent them a reminder.

Contact info.  Tony Scialabba, 856 396-0499, ascialabba@samlawfirm.com

Happy Holidays,
Matt

**Mary Desmond**

| | |
|---|---|
| **From:** | Larry Dunn [LDunn@StandardAuto.com] |
| **Sent:** | Thursday, January 09, 2003 2:10 PM |
| **To:** | 'Mary Desmond' |
| **Subject:** | RE: 401k |

Anthony Scialabba
Scialabba & Morrison
1002 Lincoln Drive West
Suite B
Marlton, NJ 08053
Phone 856-396-0499
Fax 856-396-0488

-----Original Message-----
From: Mary Desmond [mailto:desmondm@ranor.com]
Sent: Thursday, January 09, 2003 2:06 PM
To: Larry Dunn
Subject: FW: 401k


Larry,

Would you have the address for the new trustee for the 401k plan.

Thanks
Mary

-----Original Message-----
From: MatthewBurris@aol.com [mailto:MatthewBurris@aol.com]
Sent: Thursday, January 09, 2003 12:56 PM
To: "Mary Desmond"
Subject: RE: 401k


Mary:

sorry, I do not have the address on me.  Larry would though.  Alternatively,
call Jonathon Orsen at the same firm.  I found him very responsive.

Matt

1

## Mary Desmond

| | |
|---|---|
| **From:** | Mary Desmond [desmondm@ranor.com] |
| **Sent:** | Tuesday, January 14, 2003 9:03 AM |
| **To:** | Larry Dunn |
| **Subject:** | 401K |

Larry,

Could you tell me who the trustee of the plan was before the new one took over, and when the new trustee officially took over.

Thanks
Mary

1

## · Mary Desmond

| | |
|---|---|
| **From:** | Larry Dunn [LDunn@StandardAuto.com] |
| **Sent:** | Tuesday, January 14, 2003 9:28 AM |
| **To:** | 'Mary Desmond' |
| **Subject:** | RE: 401K |

I was told to refer all questions on the 401k to Tony Scialabba at
856-396-0499. Did you know that Matt left?

Larry

-----Original Message-----
From: Mary Desmond [mailto:desmondm@ranor.com]
Sent: Tuesday, January 14, 2003 9:03 AM
To: Larry Dunn
Subject: 401K

Larry,

Could you tell me who the trustee of the plan was before the new one took
over, and when the new trustee officially took over.

Thanks
Mary

*fax -*
*6(7 574 -~~5774~~*
*7554*
*Barbara Surger*
*Wayne Miller?*

1

## Mary Desmond

| | |
|---|---|
| **From:** | Mary Desmond [desmondm@ranor.com] |
| **Sent:** | Thursday, January 02, 2003 5:16 PM |
| **To:** | ascialabba@samlawfirm.com |
| **Cc:** | Matthew Burris |
| **Subject:** | 401K Transfer |

Tony,

I was given your name from Matt Burris at Standard Automotive as the new contact for the Standard Automotive 401K plan.  I had sent Matt a request to transfer funds from the plan to our New Ranor 401k plan and wanted to know if you could update me on the status of that request.

Thanks
Mary Desmond

LAW OFFICES

# ANTHONY L. SCIALABBA & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

ANTHONY L. SCIALABBA•
GEOFFREY M. STRUNK•

JONATHAN A. ORSEN•
STEPHEN J. MOGILA▲
NOËLLE WHITE+

GREENTREE EXECUTIVE CAMPUS
1002 LINCOLN DRIVE WEST
SUITE B
MARLTON, NEW JERSEY 08053
856-396-0499
FACSIMILE: 856-396-0488
E-MAIL: email@samlawfirm.com

OF COUNSEL:
JOHN C. PENBERTHY, III ♦
M. KRISTI COOK✻
ELIZABETH A. JENKINS+

• ALSO PA. DC & OH BARS
♦ ALSO PA. BAR
+ ALSO NY BAR
▲ ALSO MD BAR
✻ PA ONLY

January 17, 2003

DRAFT

TO: Participants in the Standard Automotive Corporation 401(k) Plan

RE: Status of the Plan Termination and Distribution of Plan Assets With Regard to the Standard Automotive Corporation 401(k) Plan

Dear Participant:

We are counsel to the Standard Automotive Corporation 401(k) Plan ("Plan"). We are working on terminating the Plan so that the plan assets can be distributed to you in a "tax-qualified" manner (If the distribution is made in a tax-qualified manner, you will be eligible to roll it over to another tax-qualified retirement plan that is sponsored by another employer or an IRA). In this regard, we need to do the following:

(1) resolve certain matters with the independent auditors that service the Plan,
(2) submit the Plan to the IRS to obtain approval of the tax-qualified status of the Plan upon termination, and
(3) distribute the assets of the Plan to its participants.

If you have any questions with regard to this letter, please call me.

Very truly yours,

ANTHONY L. SCIALABBA
& ASSOCIATES, P.C.

Anthony L. Scialabba

# ANTHONY L. SCIALABBA

GREENTREE EXECUTIVE CAMPUS
1002 LINCOLN DRIVE WEST
SUITE B
MARLTON, NEW JERSEY 08053
856-396-0499
FACSIMILE: 856-396-0488

March 5, 2003

TO:    Participants in the Standard Automotive Corporation 401(k) Plan

RE:    Status of the Plan Termination and Distribution of Plan Assets With Regard to the
       Standard Automotive Corporation 401(k) Plan

Dear Participant:

I serve as a trustee and plan administrator in relation to the Standard Automotive
Corporation 401(k) Plan ("Plan"). I am working to terminate the Plan at the request of Standard
Automotive Corporation due to its bankruptcy. As you may be aware, distributions from the
Plan are delayed until certain issues are resolved. This letter sets forth the reasons for the delay
of your direct rollover or distribution from the Plan.

Fiduciaries in relation to a retirement plan such as the Plan (i.e., Trustees and Plan
Administrators) are required by the Employee Retirement Income Security Act of 1974, as
amended ("ERISA"), to act in a prudent manner when performing their fiduciary functions.
ERISA requires a fiduciary to discharge his or her duties with the care, skill, prudence, and
diligence under the circumstances that a prudent man acting in a like capacity would use. ERISA
§ 404(a)(1)(B). In this regard, it is prudent that the fiduciaries of the Plan delay distributions
from the Plan until they (1) file a Form 5500, Annual Return/Report of Employee Benefit Plan
("Form 5500"), and obtain an independent audit of the Plan; (2) verify the integrity of the
account balances of the participants in the Plan through an independent auditor; and (3) receive
approval from the Internal Revenue Service ("IRS") with regard to the tax-qualified status of the
Plan upon termination.

First, an administrator of any retirement plan that is subject to ERISA must generally file
a Form 5500 to comply with the requirements of the Department of Labor ("DOL") and the IRS.
ERISA §§ 103; 104; 4065; I.R.C. § 6058. A Form 5500 is an annual report which sets forth the
operations of such plan being reported. In conjunction with the Form 5500, an independent audit
must generally be completed and filed. ERISA § 103(a)(3)(A). Such independent audit is
required by law in order to ensure the integrity of the overall administration of a plan. The Plan
is subject to the audit requirement. In this regard, I hired an independent auditor which is in the
process of auditing the Plan in order to file the necessary Forms 5500 with respect to the Plan.

Second, in conjunction with the audit of the administration of the Plan, the auditor will
verify the accuracy of the participant balances in the Plan to avoid any discrepancies with respect
to the distribution of your account balance. It is prudent for the fiduciaries of the Plan to take the
necessary steps to eliminate the possibility of an overvaluation or undervaluation with respect to

Anthony L. Scialabba

March 5, 2003
Page 2

your account balance in the Plan.  Failure to distribute the correct participant account balances could result in the misallocation or alienation of your account balance in the Plan which violates the anti-alienation rule and the exclusive benefit rule as set forth under ERISA and the Internal Revenue Code of 1986, as amended ("Code").  ERISA § 206(d); I.R.C. §§ 401(a)(2); 401(a)(13).

Third, I am in the process of submitting the Plan to the IRS to receive a determination letter that approves the tax-qualified status of the Plan upon termination.  It is prudent to obtain a favorable determination letter from the IRS because it provides reliance that the form of the Plan satisfies the tax-qualification rules of the Code.  Such a letter is valuable because if the Plan was audited by the IRS, it would limit the scope of such audit to operational matters.  In addition, if a plan is considered not to be tax-qualified, the employees who participate in such plan may be subject to immediate taxation with regard to amounts in their plan accounts.  Furthermore, non-qualified plan assets can not be "rolled over" into another tax-qualified retirement plan.  If assets from a non-tax-qualified plan are rolled over to a tax-qualified plan, then this would cause the tax-qualified plan to be operated in a manner that is not tax-qualified.  "Disqualification" of the Plan also would have a tax impact on the trust of the Plan ("Trust") and indirectly impact the participants.  In this regard, disqualification would result in the loss of tax-exempt status for the Trust and cause the Trust to be taxed on the earnings that accrued on the assets of the Trust for all "open" tax years and be subject to additional penalties and interest.  The tax impact on the Trust would then "pass through" to the participants because the taxes, penalties and interest assessed on the Trust would be paid from the accounts of the participants.

After the IRS is satisfied that the Plan is in a tax-qualified form, the government will issue a favorable determination letter that approves the tax-qualified status of the Plan upon termination.  Upon the issuance of the determination letter and the resolution of the other issues discussed within this letter, the assets of the Plan will be distributed to the respective participants.

**Throughout this process, you will continue to be able to direct the investment of your funds and I will periodically update you on the status of the termination.  In addition, I fully intend to terminate the Plan in accordance with the prescribed rules of the DOL and the IRS.**

I request your patience while I complete the termination process.  My goal is conclude the termination of the Plan as expeditiously as possible.

If you have any questions, please feel free to call me at (856)-396-0499.

Very truly yours,

Anthony L. Scialabba
Plan Administrator and Trustee

F:\Clients\Standard Auto\Termination Docs\401(k) term status letter - ALS.wpd

**PAUL D. WATTS**
7 CRYSTAL STREET
WAKEFIELD, MA 01880
(781) 245-8020
FAX (781) 224-0773

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

March 28, 2003

Anthony L. Scialabba
Standard Automotive Corporation 401K Plan Administrator and Trustee
Law Office of Anthony L. Scialabba
Greentree Executive Campus
1002 Lincoln Drive West, Suite B
Marlton, NJ 08053

Subject:   Response to the Participants in the Standard Automotive Corporation 401(K) Plan ("Plan");
Status of the Plan Termination and Distribution of Plan Assets (dated March 5, 2003)

Dear Mr. Scialabba:

I am writing to you in response to your letter dated March 5, 2003 in which you updated all Plan Participants as to your duties in the termination and distribution process of the Plan Assets. While your status report outlined your obligations as the Plan Administrator and Trustee, it did not provide me, as a Plan participant, any information as to the fund distribution schedule you are committing to. Your letter ignores the deadline of March 20, 2003 that I asked you to honor. It is important to me that I have access to my 401K funds as soon as possible, not just to reallocate in the old plan, but to rollover into our new plan. While fulfilling your fiduciary duties, I would appreciate and urge you to appreciate my right to fully control my funds in the 401K plan of my choosing – as soon as possible; and to have as much as possible be there when I roll it into the new plan.

Not only as a Plan participant, but also for all Plan participants, I have the following requests in response to your letter:

- Your letter states that the administrator of any retirement plan subject to ERISA must generally file a Form 5500 [Annual Return/Report of Employee Benefit Plan] to comply with the Department of Labor (DOL) and the Internal Revenue Service (IRS). I request that you provide an official copy of the Form 5500 being submitted to the DOL and the IRS at the same time that you provide this form to them.

- Your letter states that you have hired an independent auditor that is in the process of auditing the Plan to verify the integrity of the account balances of the participants in the Plan, in order to file the necessary Forms 5500 with respect to the Plan. I request that you provide the name and the address of the independent auditor completing this task, how much the audit is likely to cost, and when the audit is likely to conclude. Additionally, I would like to get a copy of the auditor's report as soon as it is made available to you.

- Your letter states that you receive approval from the IRS with regard to the tax-qualified status of the Plan upon termination. I request that you provide me with official notification of the process and submittal of the Plan to the IRS. It is my understanding that you are legally obligated to notify all Plan participants of this action twenty-four days prior to submittal. When do you anticipate that the IRS filing will take place?

Additionally, I request that you respond to the following requests and questions.

- Please provide a written estimated schedule/timeline and monthly written update as to the progress being made of the status of Plan Termination and Distribution, including the completion of the Form 5500, progress and completion of the independent audit, and submission of the Plan to the IRS for determination of tax-qualified status.

**PAUL D. WATTS**
7 CRYSTAL STREET
WAKEFIELD, MA 01880
(781) 245-8020
FAX (781) 224-0773

- Please provide an accurate accounting of the costs incurred by your firm and others acting on the Plan's behalf since you took over as Plan Administrator and Trustee, an estimate of costs to be incurred in the future; and a monthly update of costs incurred until final termination and distribution of all Plan assets.

- Please provide information as to exactly what documentation you need me as a Plan participant, once you have completed your work, in order to expeditiously complete the distribution of plan assets (my rollover check) that was previously requested of the Plan Administrator (Mr. Larry Dunn) and furnished to him on November 18, 2002 by Ms. Mary Desmond, RANOR, Inc. Chief Financial Officer.

- Please provide a written response to the loan issue addressed by those Plan Participants that currently have loans against their Plan assets, as outlined in their letter to you dated March 4, 2003.

- It is the understanding that: (1) the bulk of the Plan Assets residing currently in the Standard Automotive Corporation 401(K) Plan are assets of the RANOR, Inc. employees, and (2) the vast majority of the employees of the other divisions of SAC were able to divest their funds prior to your taking over as the Plan Administrator and Trustee. Therefore, what is the rationale that all of the costs associated with your actions regarding the filing of the Form 5500, the costs of the independent auditor and audit report, and the submission of the Plan to the IRS for determination of the tax-qualified status are to be borne by this group left "holding the bag", rather than equal distribution of the costs among all previous Plan participants? While realizing the duties outlined in your letter, and that this may be the law, I am concerned by this unfairness that is being borne disproportionately by the RANOR employees.

I look forward to hearing from you soon.

Very truly yours,

Paul D. Watts

Plan Participant
Standard Automotive Corporation 401(K) Plan

PDW/ms
cc:    Mary Desmond, CFO, RANOR, Inc.
       James Benages, EBSA – Boston Regional Office
       Yvette Morgan, EBSA New York Regional Office

Bella Drive, Westminster, MA 01473 Fax (978) 874-2748
Tel. 978-874-0591

**RANOR Inc.**



| To: | Kim Gordon | From: | Mary Desmond |
|-----|-----------|-------|--------------|
| Fax: | 732-514-8799 | Pages: | 3 |
| Phone: | | Date: | 4/1/2003 |
| Re: | 401(k) Plan Loan Repayments | CC: | |
| | Plan 42557K | | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

Kimberly,

On March 31, 2003, Ranor Wired $72,843.10 to PNC bank for repayment of loans listed on the attached form. The plan number is 42557K (Standard Automotive). Please advise when the loans have been paid off. If you have any questions, please call me at 978-874-0591

Thank you,

Mary Desmond

*800-519-9117*
*Lee will call me on 4-12-03*



## citistreet℠

A State Street and Citigroup Company

### Periodic Payroll Remittance Form

Employer Name: **Standard Automotive**

Plan # / Employer ID# **42557K**    For Pay Date: _____    Remit Frequency: 12  24  26

(circle one)

Check No. _____    Amount of Check: $ *72,843.10*

COMMENTS:    **Attached is a list of loans to be paid in full with the**

**Funds wire transfered from Ranor Inc.** *3/31/03*

_____

_____

_____

**Prepared by: Name/Telephone Number**    **Date Prepared**

---

**(SECTION 2)**
*IF SENDING Company* **CHECK** By Regular Mail:
Send Check and Remittance Form to:

CitiStreet
401(k) Plan Services
P.O. Box 820007
Philadelphia, PA  19182-0007

*IF SENDING Company* **CHECK OVERNIGHT**:
Send Check, Remittance Form and Hard Copy Reports to:

PNC BANK / CitiStreet
Route 38 & Eastgate Drive
Moorestown, NJ  08057
Attn: Box 007 / Remittance Processing

*MAKE CHECK PAYABLE TO:* CitiStreet

---

**(SECTION 3)**
*IF COMPLETING* **WIRE TRANSFER**:

1.  WIRE INSTRUCTIONS TO:

    PNC BANK
    ABA #031207607
    Account #8010255716

    FBO *42557K / Standard automotive*
    Plan # / Employer ID #    Plan Name

    COMMENTS: PAYROLL DATED ____ / ____ / ____

2.  SEND REMITTANCE FORM AND HARD COPY REPORTS TO:

    CitiStreet
    401(k) Contribution Processing
    P.O. Box 1063
    Two Tower Center
    East Brunswick, NJ 08816-1063

**IMPORTANT:** The Plan # / Employer ID # and the Plan Name
should appear on wires

**\*\*PLEASE NOTE\*\***

WHEN *REMITTING DISKETTES, CATRIDGES OR MAGNETIC TAPES*, INCLUDE REMITTANCE FORM AND MAIL TO THE EAST BRUNSWICK ADDRESS

WHEN *REMITTING ROLLOVER INFORMATION*, PLEASE SEND CHECK, ROLLOVER-IN FORM, ENROLLMENT/CHANGE FORM AND BENEFICIARY DESIGNATION FORM TO THE BANK ADDRESS ABOVE.  IF *REMITTING THE ROLLOVER BY WIRE*, PLEASE FOLLOW THE WIRING INSTURCTIONS IN SECTION 3-1, HOWEVER THE COMMENTS FIELD SHOULD REFERENCE "ROLLOVER FOR [NAME OF PARTICIPANT]".  THE ROLLOVER-IN FORM AND APPLICABLE PAPER WORK SHOULD BE SENT TO THE EAST BRUNSWICK ADDRESS.

IF YOU HAVE ANY QUESTIONS, PLEASE CALL CitiStreet AT 1-888-822-4710

**Smith Barney Plan Services**
**Blueprint 401(k) Payroll & Contribution Reporting Form**

**Wired on 03/31/03**

Plan Name:    **Standard Automotive**
Plan # 42557K

| Social Security # | Name | Loan Repayment |
|---|---|---|
| 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 | BURNS,MICHAEL J | 1,443.07 |
| 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 | FREEMAN,RICHARD A | 18,626.40 |
| 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 | GUICHARD,EDWARD | 2,759.65 |
| 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 | GUILMETTE,STEPHEN J | 666.59 |
| 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 | HAMEL,RICHARD A | 4,107.05 |
| 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 | HITCHCOCK,WILLIAM D | 4,115.28 |
| 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 | LAROCHE,BERNARD J | 12,411.78 |
| 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 | LUCIER,DAVID A | 3,274.51 |
| 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 | NEFF,ERIC D | 474.91 |
| 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 | NEFF,ERIC D | $3,500.00 |
| 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 | NEWTON,DOUGLAS A | 3,983.04 |
| 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 | OUELLETTE,RANDY C | 512.88 |
| 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 | POIRIER,LOUIS J | 14,813.25 |
| 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 | SAWYER,MAURICE C | 2,154.69 |
| | | 72,843.10 |

# ANTHONY L. SCIALABBA

GREENTREE EXECUTIVE CAMPUS
1002 LINCOLN DRIVE WEST
SUITE B
MARLTON, NEW JERSEY 08053

May 1, 2003

<u>Via Overnight Mail</u>

Ms. Mary Desmond
Ranor, Inc.
Bella Drive
Westminster, MA 01473

Re: The Standard Automotive Corporation 401(k) Plan

Dear Ms. Desmond:

As you know, we are in the process of terminating the Standard Automotive Corporation 401(k) Plan ("Plan"). In this regard, we must engage an independent auditor to audit the Plan for the 2000, 2001, and 2002 plan years of the Plan, resolve outstanding issues with respect to the Plan, and file for a determination letter from the Internal Revenue Service approving the tax-qualified status of the Plan. Section 403(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provides that plan assets can be used to defray the expenses of administering a plan. The Department of Labor ("DOL") has taken the position that costs related to implementing the termination of a plan are also payable out of plan assets. In addition, section 8.03 of the basic plan document to the Plan provides that plan expenses may be paid from plan assets. Therefore, a portion of the costs of the abovementioned activities have been deducted from each participant's account.

We are in contact with the DOL in relation to this matter to ensure that they are aware of this situation and that we are terminating the Plan in compliance with the applicable laws. I request your patience while I complete the termination process. My goal is to conclude the termination of the Plan as expeditiously as possible.

Very truly yours,

Anthony L. Scialabba

## . Mary Desmond

| | |
|---|---|
| **From:** | Mary Desmond [desmondm@ranor.com] |
| **Sent:** | Friday, May 02, 2003 4:10 PM |
| **To:** | Tony Scialabba |
| **Cc:** | Noelle White; Stan Youtt; Glen Radigan; Paul Watts; Ray McInnis; Wally Teto |
| **Subject:** | 401k  Plan Exp. |

Anthony,

I received the letter you sent me in response to my question regarding the fees charged to all the plan participants on their 03/31/03 statement from Citistreet. I do understand all that you are currently working on to closeout the plan, and hope this is nearing completion.

Based on some quick calculations, however, we believe the fees charged to date exceed $225,000.00.  This is truly an impressive amount when you consider that you have only been the trustee and administrator for approximately five months.  We arrived at this calculation by totaling up the plan balances of all the Ranor participants and multiplying by 9.7%.  We feel as plan participants that this is excessive.  Is there anything you can give me to substantiate this amount charged?  Could you also bring us up to date on what has been accomplished to date from the items identified on your list?  I really need something that I can tell to the participants to justify $225,000 in charges and if they should expect this to occur again.

As a plan participant I want to reiterate that I am extremely concerned and frustrated by the cost and the pace of this process.  I assume that your duty as a fiduciary is to affect a fair distribution as quickly and cost effectively as possible.

Mary Desmond

# MORTON C. BATT

P.O. Box 1189
Marlton, NJ 08053

To:     Participants in the Standard Automotive Corporation Employer Contribution Plan

From:  Morton C. Batt, Trustee of the Standard Automotive Corporation Employer Contribution
        Plan

Re:     Trustee Change With Regard to the Standard Automotive Corporation Employer
        Contribution Plan

Date:   February 27, 2004

---

Dear Participant:

On December 9, 2003, the Standard Automotive Corporation ("Company") appointed me to serve as the trustee and plan administrator in relation to the Standard Automotive Corporation Employer Contribution Plan ("Plan"). Please find enclosed a copy of the "summary of material modifications" ("SMM") with regard to the Plan. This document summarizes the changes associated with my appointment to the abovementioned fiduciary positions by the Company. The SMM is meant to supplement your copy of the summary plan description to the Plan ("SPD"). Therefore, upon your review of the SMM, please attach a copy of such document to your SPD.

In general, fiduciaries in relation to a retirement plan such as the Plan (i.e., Trustees and Plan Administrators) are required by ERISA, to act in a prudent manner when performing their fiduciary functions. ERISA requires a fiduciary to discharge his or her duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity would use. As you may know, we are in the process of terminating the Plan. In this regard, with respect to the termination of the Plan, it is prudent that the fiduciaries: (1) file a Form 5500, Annual Return/Report of Employee Benefit Plan ("Form 5500"), and obtain an independent audit of the Plan; (2) verify the integrity of the account balances of the participants in the Plan through an independent auditor; and (3) receive approval from the Internal Revenue Service ("IRS") with regard to the tax-qualified status of the Plan upon termination. Therefore, with respect to my fulfillment of the abovementioned fiduciary duties under ERISA, I am working to resolve these issues in order to terminate the Plan.

Throughout this process, you will continue to be able to direct the investment of your funds and I will periodically update you on the status of the termination. In addition, as indicated above, I fully intend to terminate the Plan in accordance with the prescribed rules of the Department of Labor and the IRS.

Morton C. Batt

Page 2

I request your patience while I complete the termination process.  My goal is to conclude the termination of the Plan as expeditiously as possible.

Very truly yours,

Morton C. Batt
Trustee and Plan Administrator

Enclosures

# SUMMARY OF MATERIAL MODIFICATIONS
## TO THE
## STANDARD AUTOMOTIVE CORPORATION EMPLOYER CONTRIBUTION PLAN

Effective December 9, 2003, the Standard Automotive Corporation Employer

Contribution Plan ("Plan") was amended to provide that Anthony L. Scialabba be removed as the

"Plan Administrator," "Trustee," and "Named Fiduciary" of the Plan and that Morton C. Batt be

named as the Plan Administrator, Trustee and Named Fiduciary of the Plan. This Summary of

Material Modifications ("SMM") is meant to supplement your copy of the Summary Plan

Description ("SPD"). Please attach a copy of this SMM to your SPD. If you have any questions

about the SMM, the SPD or the Plan, you should contact the Plan Administrator.

# MORTON C. BATT

P.O. Box 1189
Marlton, NJ 08053

To:    Participants in the Standard Automotive Corporation 401(k) Plan

Re:    Status of the Plan Termination and Distribution of Plan Assets With Regard to the
Standard Automotive Corporation 401(k) Plan

Date:   April 2, 2004

Dear Participant:

I wrote previously to inform you of my appointment as trustee and plan administrator with respect to the Standard Automotive Corporation 401(k) Plan ("Plan"). I am working to terminate the Plan at the request of Standard Automotive Corporation due to its bankruptcy. As you may be aware, distributions from the Plan are delayed until certain issues are resolved. On March 5, 2003, the prior trustee and plan administrator with respect to the Plan, Anthony L. Scialabba, wrote you a letter which set forth the reasons for the delay of your direct rollover or distribution from the Plan. I am writing to reiterate the reasons for the abovementioned delay and to update you on the status of my ongoing efforts to resolve the outstanding issues with regard to the Plan.

Fiduciaries in relation to a retirement plan such as the Plan (i.e., Trustees and Plan Administrators) are required by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), to act in a prudent manner when performing their fiduciary functions. ERISA requires a fiduciary to discharge his or her duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity would use. ERISA § 404(a)(1)(B). In this regard, it is prudent that the fiduciaries of the Plan delay distributions from the Plan until they (1) file Forms 5500, Annual Return/Report of Employee Benefit Plan ("Forms 5500"), and obtain an independent audit of the Plan; (2) verify the integrity of the account balances of the participants in the Plan through an independent auditor; and (3) receive approval from the Internal Revenue Service ("IRS") with regard to the tax-qualified status of the Plan upon termination.

In order to resolve the abovementioned issues with regard to the Plan, the independent auditor must obtain certain records from CitiStreet, the company that provides record-keeping services with respect to the Plan. As of the date of this letter, the auditor has been unable to obtain these records from CitiStreet, despite numerous requests. CitiStreet's failure to provide these records is preventing the auditor from completing the audit of the Plan and verifying the participant account balances. As discussed above, it is necessary to complete the audit of the Plan and verify the integrity of participant account balances with respect to the Plan prior to distribution of the account balances. Thus, your account balance cannot be distributed until CitiStreet provides these records with respect to the Plan. In this regard, I will take the necessary legal action to compel CitiStreet to comply with the auditor's request for the necessary records.

**Morton C. Batt**

Page 2

Once the auditor verifies the integrity of the account balances of the participants in the Plan and completes the audit of the Plan, I will submit the Plan to the IRS for review. After the IRS is satisfied that the Plan is in a tax-qualified form, the government will issue a favorable determination letter that approves the tax-qualified status of the Plan upon termination. Upon the issuance of the determination letter and the resolution of the other issues discussed within this letter, the assets of the Plan will be distributed to the respective participants.

Throughout this process, you will continue to be able to direct the investment of your funds and I will periodically update you on the status of the termination. In addition, I fully intend to terminate the Plan in accordance with the prescribed rules of the DOL and the IRS.

I request your patience while I complete the termination process. As discussed above, my progress has been delayed due to the inability of the auditor to obtain certain records from CitiStreet with regard to the Plan. However, my goal is to conclude the termination of the Plan as expeditiously as possible.

Very truly yours,

Morton C. Batt
Plan Administrator and Trustee

# MORTON C. BATT

P.O. Box 1189
Marlton, NJ 08053
(856) 797-7490
morton.batt@psinet.com

To:    Participants in the Standard Automotive Corporation 401(k) Plan

Re:    Status of the Plan Termination and Distribution of Plan Assets With Regard to the
       Standard Automotive Corporation 401(k) Plan

Date:  June 28, 2004

Dear Participant:

As you know, I am the trustee and plan administrator with respect to the Standard
Automotive Corporation 401(k) Plan ("Plan"). I am terminating the Plan at the request of
Standard Automotive Corporation due to its bankruptcy. As you are aware, distributions from
the Plan are delayed until certain issues are resolved. This letter reiterates the reasons for the
delay of your direct rollover or distribution from the Plan and updates you on the status of my
efforts to resolve the issues that concern the Plan. In this regard, there is an important
development in relation to my attempts to obtain necessary records with respect to the Plan from
CitiStreet, the company that provides record-keeping services with regard to the Plan.

Fiduciaries in relation to a retirement plan such as the Plan (i.e., Trustees and Plan
Administrators) are required by the Employee Retirement Income Security Act of 1974, as
amended ("ERISA"), to act in a prudent manner when performing their fiduciary functions.
ERISA requires a fiduciary to discharge his or her duties with the care, skill, prudence, and
diligence under the circumstances that a prudent man acting in a like capacity would use. ERISA
§ 404(a)(1)(B). In this regard, it is prudent that the fiduciaries of the Plan delay distributions
from the Plan until they (1) file Forms 5500, Annual Return/Report of Employee Benefit Plan
("Forms 5500"), and obtain an independent audit of the Plan; (2) verify the integrity of the
account balances of the participants in the Plan through an independent auditor; and (3) receive
approval from the Internal Revenue Service ("IRS") with regard to the tax-qualified status of the
Plan upon termination.

As discussed in my previous letter dated April 2, 2004, in order to resolve the
abovementioned issues with regard to the Plan, the independent auditor must obtain certain
records from CitiStreet. As of the date of this letter, the auditor has was unable to obtain these
records from CitiStreet, despite numerous requests. CitiStreet's failure to provide these records
is preventing the auditor from completing the audit of the Plan and verifying the participant
account balances. As discussed above, it is necessary to complete the audit of the Plan and verify
the integrity of participant account balances with respect to the Plan prior to distribution of the
account balances. Thus, your account balance cannot be distributed until CitiStreet provides
these records with respect to the Plan.

In order to compel CitiStreet to comply with the auditor's request for the necessary

Morton C. Batt

June 28, 2004
Page 2

records, I filed a petition on behalf of the Plan with the Superior Court of Middlesex County, New Jersey. On June 23, 2004, I was successful in obtaining an order from the court requiring CitiStreet to provide me with copies of the Plan records at issue by July 31, 2004. In addition, the abovementioned court order states that CitiStreet may be required to pay monetary sanctions if it fails to timely comply with the order.

Once the auditor receives the abovementioned records, verifies the integrity of the account balances of the participants in the Plan and completes the audit of the Plan, I will submit the Plan to the IRS for review. After the IRS is satisfied that the Plan is in a tax-qualified form, the government will issue a Determination Letter that approves the tax-qualified status of the Plan upon termination. Upon the issuance of the Determination Letter and the resolution of the other issues discussed within this letter, the assets of the Plan will be distributed to the respective participants. At that time, I will forward the appropriate distribution and rollover forms to participants to be completed and returned to me for processing. Distribution or rollover forms that are executed prior to that time cannot be processed.

Throughout this process, you will continue to be able to direct the investment of your funds; and I will periodically update you on the status of the termination. In addition, I fully intend to terminate the Plan in accordance with the prescribed rules of the Department of Labor and the IRS.

I request your patience while I complete the termination process. As discussed above, my progress has been delayed due to the inability of the auditor to obtain certain records from CitiStreet with regard to the Plan. However, my goal is to conclude the termination of the Plan as expeditiously as possible.

Very truly yours,

Morton C. Batt
Plan Administrator and Trustee

Morton C. Batt
P.O. Box 1189
Marlton NJ 08053
telephone: 856.797.7490
E-Mail: morton.batt@psinet.com

October 06, 2004

TO: Tom Ziobrowski

RE: STANDARD AUTOMOTIVE CORPORATION
    401 (k) PLAN

Dear Tom:

I do not have the answer as to why CitiStreet has not provided us with the records we require. As you know , the records we requested are necessary in order to (i) verify the integrity of the account balances through an independent auditor,  (ii) file Form 5500 and, ( iii) receive IRS approval with respect to the tax-qualified status of the plan upon termination. My fiduciary duties in association with the  plan preclude me from terminating the plan, with distribution to the participants, until the foregoing conditions can be satisfied

CitiStreet failed to provide the records required by the June 23 , 2004 ORDER GRANTING EVIDENCE PETITION . Accordingly on September 17, 2004 an ORDER ENFORCING LITIGANTS RIGHTS was submitted to the Court for approval and signature and we are awaiting a response from the Court. An unsigned copy of that Order is attached.

I trust the foregoing plus attachment provides you with an understanding of the status of this matter.

Very truly yours,

Morton Batt



John C. Penberthy, III, Esquire
PENBERTHY AND PENBERTHY, P.C.
2001 Lincoln Drive West
Suite H
Marlton, NJ   08053
(856) 983-2603
Attorneys for Plaintiff

| | |
|---|---|
| MORTON C. BATT, | Superior Court of New Jersey |
| Plan Administrator and Trustee, | Middlesex County |
| | Law Division |
| Plaintiff, | |
| | Docket No. L-3084-04 |
| vs. | |
| | Civil Action |
| CITISTREET FINANCIAL CORP. | |
| a/k/a Citistreet LLC, | **Order Enforcing Litigant's Rights** |
| Defendant. | |

This matter having been opened to the Court by PENBERTHY & PENBERTHY, P.C. on plaintiff's motion for an Order Enforcing Litigant's Rights and the Defendant having failed to appear on the return date and having failed to comply with the information subpoena;

It is on this _____ day of _____, 2004, ORDERED and adjudged;

1) Citistreet LLC has violated plaintiff's rights as a litigant;

2) Citistreet LLC shall immediately furnish answers as required by the information subpoena;

3) Citistreet LLC shall comply with Morton Batt's administrative and expense requests within ten days of receipt of written requests sent by regular and certified mail;

4) If Citistreet LLC fails to comply with the information subpoena within ten (10) days of the certified date of mailing of this order, this Order shall act as an award of $1,000 per day from August 1, 2004 until the date of compliance and it shall be enforced as a Judgment against Citistreet LLC;

5) Defendant shall pay Plaintiff's attorney fees in connection with this motion, in the amount of $1,500.00.

_____
A.J.S.C.



# MORTON C. BATT

P.O. Box 1189
Marlton, NJ 08053

To:    Participants in the Standard Automotive Corporation 401(k) Plan

Re:    Status of the Plan Termination and Distribution of Plan Assets With Regard to the
       Standard Automotive Corporation 401(k) Plan

Date:  November 4, 2004

Dear Participant:

This letter is written to inform you of the current status of my efforts in resolving the outstanding issues that concern the Standard Automotive Corporation 401(k) Plan ("Plan"). As stated in my previous letters to you, your direct rollover or distribution from the Plan is delayed until certain issues are resolved. In this regard, I am writing to advise you of the recent developments in my efforts to expedite the Plan's termination and subsequent distribution.

As you know, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), requires that a fiduciary of a retirement plan act in a prudent manner when performing his or her duties. Specifically, ERISA requires a fiduciary to discharge his or her obligations with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity would use. ERISA § 404(a)(1)(B). As I stated before, as the plan trustee and administrator, I am considered a fiduciary to the Plan and I am held to the corresponding standard set forth under ERISA. In this regard, it is prudent that I delay distributions from the Plan until I: (1) file Forms 5500, Annual Return/Report of Employee Benefit Plan ("Forms 5500"), and obtain an independent audit of the Plan; (2) verify the integrity of the account balances of the participants in the Plan through an independent auditor; and (3) receive approval from the Internal Revenue Service ("IRS") with regard to the tax-qualified status of the Plan upon termination.

In following this prudent course of action, my efforts to terminate the Plan were delayed by the non-compliance of CitiStreet, the record-keeping company to the Plan. As I stated before, CitiStreet failed to comply with numerous requests for Plan records needed to conduct the Plan audit that is required for the Forms 5500 as well as to verify the Plan's account balances. As a result, I filed an order with the Superior Court of New Jersey in Middlesex County. This order required CitiStreet to produce Plan records in order to resolve discrepancies within the Plan. Although CitiStreet provided the independent auditor with some information pursuant to this order, CitiStreet failed to substantially comply with the order.

As a result of CitiStreet's substantial non-compliance with the court order, I recently filed another petition with the Superior Court of New Jersey in Middlesex County which requires compliance by CitiStreet in providing specific Plan records still needed for the required audit. I also requested that CitiStreet reimburse the attorney's fees associated with filing the order. The

**Morton C. Batt**

November 4, 2004
Page 2

court ruled that CitiStreet was compelled to comply with the order and awarded attorney's fees for filing the motion. However, to date, CitiStreet has yet to comply with the order. Therefore, I may be forced to file a formal complaint against CitiStreet so that we receive the information necessary to perform the audits.

In this regard, I retained the law firm White and Williams LLP ("Firm"). The Firm agreed to provide me with a complete investigation regarding any possible causes of action against CitiStreet and the expected amount of damages that may be recovered from CitiStreet in connection with any such causes of action. After concluding this investigation, the Firm will provide me with its evaluation of the possibility of successfully litigating any causes of action and, as mentioned above, an estimated damage award in association with such causes of action. Based on this information, I will then determine if it is prudent and cost-effective to go forward with litigation against CitiStreet. I will continue to keep you informed of any further developments regarding my decision on this issue.

Throughout this process, you will continue to be able to direct the investment of your funds and I will periodically update you on the status of the termination. In addition, I fully intend to terminate the Plan in accordance with the prescribed rules of the Department of Labor and the IRS.

I request your patience while I complete the termination process. As discussed above, my progress has been delayed due to the inability of the auditor to obtain certain records from CitiStreet with regard to the Plan. However, my goal is to conclude the termination of the Plan as expeditiously as possible.

Very truly yours,

Morton C. Batt
Plan Administrator and Trustee

# Participant Quarterly Review
### January 1, 2003 - March 31, 2003

Page 5 of 5

HELPLINE: 1-800-962-5046

**MARY DESMOND**  STANDARD AUTOMOTIVE CORP.

## Account Activity

**Employee Pre-Tax Vol. 100% VESTED**

| Investment Choices | Opening Balance 01/01/2003 | Contributions | Distributions | Transfers | Loan Repayments | Earnings Gain Or Loss | Fees/Other Activity | Closing Balance 03/31/2003 |
|---|---|---|---|---|---|---|---|---|
| TIC QUALITY BOND PORT. | $ .00 | $ .00 | $ .00 | $ 1,813.85 | $ .00 | $ 45.45 | $ .00 | $ 1,859.30 |
| FEDERATED HIGH YIELD | .00 | .00 | .00 | 1,273.21 | .00 | 48.15 | .00 | 1,321.36 |
| JANUS CAP. APP. PORT. | 3,766.33 | .00 | .00 | -3,183.01 | .00 | -220.79 | -362.53 | .00 |
| SALOMON BROS INVESTORS | .00 | .00 | .00 | 392.42 | .00 | 9.57 | .00 | 401.99 |
| SB AGGRESSIVE GROWTH | 4,642.57 | .00 | .00 | -3,924.18 | .00 | -260.13 | -458.26 | .00 |
| SB MONEY MARKET PORTFOLIO | 377.73 | .00 | .00 | .00 | .00 | .03 | -37.15 | 340.61 |
| SB S&P 500 INDEX | 2,319.76 | .00 | .00 | -1,946.58 | .00 | -150.32 | -222.86 | .00 |
| SALOMON BROS HIGH YIELD | .00 | .00 | .00 | 3,760.44 | .00 | 160.31 | .00 | 3,920.75 |
| SB DIVERS STRAT INC PORT | .00 | .00 | .00 | 1,421.43 | .00 | 27.59 | .00 | 1,449.02 |
| CITISTREET DIVERS BND I | .00 | .00 | .00 | 392.42 | .00 | 3.62 | .00 | 396.04 |
| **Subtotal Employee Pre-Tax Vol.** | **$ 11,106.39** | **$ .00** | **$ .00** | **$ .00** | **$ .00** | **$ -336.58** | **$ -1,080.80** | **$ 9,689.01** |

**Employer Discretionary 100% VESTED**

| Investment Choices | Opening Balance 01/01/2003 | Contributions | Distributions | Transfers | Loan Repayments | Earnings Gain Or Loss | Fees/Other Activity | Closing Balance 03/31/2003 |
|---|---|---|---|---|---|---|---|---|
| TIC QUALITY BOND PORT. | $ .00 | $ .00 | $ .00 | $ 14.48 | $ .00 | $ .36 | $ .00 | $ 14.84 |
| FEDERATED HIGH YIELD | .00 | .00 | .00 | 7.88 | .00 | .30 | .00 | 8.18 |
| JANUS CAP. APP. PORT. | 23.30 | .00 | .00 | -19.70 | .00 | -1.36 | -2.24 | .00 |
| SALOMON BROS INVESTORS | .00 | .00 | .00 | 3.51 | .00 | .09 | .00 | 3.60 |
| SB AGGRESSIVE GROWTH | 41.57 | .00 | .00 | -35.14 | .00 | -2.33 | -4.10 | .00 |
| SB S&P 500 INDEX | 14.66 | .00 | .00 | -12.30 | .00 | -.95 | -1.41 | .00 |
| SALOMON BROS HIGH YIELD | .00 | .00 | .00 | 26.79 | .00 | 1.14 | .00 | 27.93 |
| SB DIVERS STRAT INC PORT | .00 | .00 | .00 | 10.97 | .00 | .21 | .00 | 11.18 |
| CITISTREET DIVERS BND I | .00 | .00 | .00 | 3.51 | .00 | .03 | .00 | 3.54 |
| **Subtotal Employer Discretionary** | **$ 79.53** | **$ .00** | **$ .00** | **$ .00** | **$ .00** | **$ -2.51** | **$ -7.75** | **$ 69.27** |
| **Total Account** | **$ 11,697.40** | **$ .00** | **$ .00** | **$ .00** | **$ .00** | **$ -355.18** | **$ -1,138.38** | **$ 10,203.84** |

## Bulletin Board II

The above information has been obtained from sources we believe to be reliable, but we cannot guarantee its accuracy or completeness.

Due to timing of when contributions were received, certain amounts deducted from your paycheck during the quarter may not be included on your quarterly statement, but will be reflected on your next quarterly statement.

502 M0255NJ42557K  001BLU44601586081

Administered and Serviced by

# citistreet
A State Street and Citigroup Company

# Participant Quarterly Review
April 1, 2003 - June 30, 2003

Page 4 of 4

| MARY DESMOND | STANDARD AUTOMOTIVE CORP. | HELPLINE: 1-800-962-5046 |

## Account Activity
This section shows detail of all activity in your account, organized by type of contribution, for the current period. The Fees/Other Activity column includes any recordkeeping and other administrative services as applicable to your account.

| | Investment Choices | Opening Balance 04/01/2003 | Contributions | Distributions | Transfers | Loan Repayments | Earnings Gain Or Loss | Fees/Other Activity | Closing Balance 06/30/2003 |
|---|---|---|---|---|---|---|---|---|---|
| **Employer Match 100% VESTED** | TIC QUALITY BOND PORT. | $91.45 | $.00 | $.00 | $.00 | $.00 | $2.44 | $-2.91 | $90.98 |
| | FEDERATED HIGH YIELD | 51.86 | .00 | .00 | .00 | .00 | 3.87 | -1.69 | 54.04 |
| | SALOMON BROS INVESTORS | 21.93 | .00 | .00 | .00 | .00 | 4.33 | -.77 | 25.49 |
| | SALOMON BROS HIGH YIELD | 189.59 | .00 | .00 | .00 | .00 | 15.59 | -6.26 | 198.92 |
| | SB DIVERS STRAT INC PORT | 69.12 | .00 | .00 | .00 | .00 | 3.15 | -2.23 | 70.04 |
| | CITISTREET DIVERS BND1 | 21.61 | .00 | .00 | .00 | .00 | .61 | -.69 | 21.53 |
| | **Subtotal Employer Match** | $445.56 | $.00 | $.00 | $.00 | $.00 | $29.99 | $-14.55 | $461.00 |
| **Employee Pre-Tax Vol. 100% VESTED** | TIC QUALITY BOND PORT. | $1,859.30 | $.00 | $.00 | $.00 | $.00 | $49.78 | $-59.07 | $1,850.01 |
| | FEDERATED HIGH YIELD | 1,321.36 | .00 | .00 | .00 | .00 | 98.56 | -43.15 | 1,376.77 |
| | SALOMON BROS INVESTORS | 401.99 | .00 | .00 | .00 | .00 | 79.37 | -14.14 | 467.22 |
| | SB MONEY MARKET PORTFOLIO | 340.55 | .00 | .00 | .00 | .00 | -.06 | -10.60 | 329.89 |
| | SALOMON BROS HIGH YIELD | 3,920.75 | .00 | .00 | .00 | .00 | 322.25 | -129.55 | 4,113.45 |
| | SB DIVERS STRAT INC PORT | 1,449.02 | .00 | .00 | .00 | .00 | 66.08 | -46.70 | 1,468.40 |
| | CITISTREET DIVERS BND1 | 396.04 | .00 | .00 | .00 | .00 | 11.24 | -12.62 | 394.66 |
| | **Subtotal Employee Pre-Tax Vol.** | $9,689.01 | $.00 | $.00 | $.00 | $.00 | $627.22 | $-315.83 | $10,000.40 |
| **Employer Discretionary 100% VESTED** | TIC QUALITY BOND PORT. | $14.84 | $.00 | $.00 | $.00 | $.00 | $.40 | $-.47 | $14.77 |
| | FEDERATED HIGH YIELD | 8.18 | .00 | .00 | .00 | .00 | .61 | -.27 | 8.52 |
| | SALOMON BROS INVESTORS | 3.60 | .00 | .00 | .00 | .00 | .70 | -.13 | 4.17 |
| | SALOMON BROS HIGH YIELD | 27.93 | .00 | .00 | .00 | .00 | 2.29 | -.92 | 29.30 |
| | SB DIVERS STRAT INC PORT | 11.18 | .00 | .00 | .00 | .00 | .51 | -.36 | 11.33 |
| | CITISTREET DIVERS BND1 | 3.54 | .00 | .00 | .00 | .00 | .10 | -.11 | 3.53 |
| | **Subtotal Employer Discretionary** | $69.27 | $.00 | $.00 | $.00 | $.00 | $4.61 | $-2.26 | $71.62 |
| | **Total Account** | $10,203.84 | $.00 | $.00 | $.00 | $.00 | $661.82 | $-332.64 | $10,533.02 |

## Bulletin Board II
The above information has been obtained from sources we believe to be reliable, but we cannot guarantee its accuracy or completeness.

Due to timing of when contributions were received, certain amounts deducted from your paycheck during the quarter may not be included on your quarterly statement but will be reflected on your next quarterly statement.

Ref. 021 42557-001 000-000 PAR EXT 013-013107-09893!

502 M0255N4J42557K   001BLU44601370881

# Participant Quarterly Review
## July 1, 2003 - September 30, 2003

Page 5 of 5

MARY DESMOND

STANDARD AUTOMOTIVE CORP.

HELPLINE: 1-800-962-5046

## Account Activity

| | Investment Choices | Opening Balance 07/01/2003 | Contributions | Distributions | Transfers | Loan Repayments | Earnings Gain Or Loss | Fees/Other Activity | Closing Balance 09/30/2003 |
|---|---|---|---|---|---|---|---|---|---|
| **Employee Pre-Tax Vol. 100% VESTED** | CITISTREET DIVERS BND I | $394.66 | $.00 | $.00 | $.00 | $.00 | $-1.45 | $-.82 | $392.39 |
| | TIC QUALITY BOND PORT. | 1,850.01 | .00 | .00 | .00 | .00 | -.80 | -3.84 | 1,845.37 |
| | FEDERATED HIGH YIELD | 1,376.77 | .00 | .00 | .00 | .00 | 38.88 | -2.90 | 1,412.75 |
| | SALOMON BROS HIGH YIELD | 4,113.45 | .00 | .00 | .00 | .00 | 91.75 | -8.65 | 4,196.55 |
| | SALOMON BROS INVESTORS | 467.22 | .00 | .00 | .00 | .00 | 6.24 | -.97 | 472.49 |
| | SB MONEY MARKET PORTFOLIO | 329.89 | .00 | .00 | .00 | .00 | -.24 | -.69 | 328.96 |
| | SB DIVERS STRAT INC PORT | 1,468.40 | .00 | .00 | .00 | .00 | 4.84 | -3.05 | 1,470.19 |
| | **Subtotal Employee Pre-Tax Vol.** | $10,000.40 | $.00 | $.00 | $.00 | $.00 | $139.22 | $-20.92 | $10,118.70 |
| **Employer Discretionary 100% VESTED** | CITISTREET DIVERS BND I | $3.53 | $.00 | $.00 | $.00 | $.00 | $-.01 | $-.01 | $3.51 |
| | TIC QUALITY BOND PORT. | 14.77 | .00 | .00 | .00 | .00 | -.01 | -.03 | 14.73 |
| | FEDERATED HIGH YIELD | 8.52 | .00 | .00 | .00 | .00 | .24 | -.02 | 8.74 |
| | SALOMON BROS HIGH YIELD | 29.30 | .00 | .00 | .00 | .00 | .66 | -.06 | 29.90 |
| | SALOMON BROS INVESTORS | 4.17 | .00 | .00 | .00 | .00 | .06 | -.01 | 4.22 |
| | SB DIVERS STRAT INC PORT | 11.33 | .00 | .00 | .00 | .00 | .04 | -.02 | 11.35 |
| | **Subtotal Employer Discretionary** | $71.62 | $.00 | $.00 | $.00 | $.00 | $.98 | $-.15 | $72.45 |
| | **Total Account** | $10,533.02 | $.00 | $.00 | $.00 | $.00 | $146.62 | $-22.03 | $10,657.61 |

## Bulletin Board II

If you are age 70 1/2 or older, the Internal Revenue Code requires that you take a minimum payout from your retirement plan. This payout must begin by April 1 following the year you attain age 70 1/2, or (if you are not a more than 5 percent owner) the year you retire, if later. You could face an additional 50 percent penalty tax if you fail to take a required distribution. To receive a distribution, please submit a claim to your plan administrator. You can get the necessary distribution form from your plan administrator, at your plan's Web site, or by calling the toll-free number shown at the top of your statement.

The above information has been obtained from sources we believe to be reliable, but we cannot guarantee its accuracy or completeness.

Due to timing of when contributions were received, certain amounts deducted from your paycheck during the quarter may not be included on your quarterly statement, but will be reflected on your next quarterly statement.

502 M0255NJ42557K   001BLU4460449481

**Participant Quarterly Review**
October 1, 2003 - December 31, 2003

Page 5 of 5

MARY DESMOND

STANDARD AUTOMOTIVE CORP.

HELPLINE: 1-800-962-5046

Employer
Discretionary
100% VESTED

## Account Activity

| Investment Choices | Opening Balance 10/01/2003 | Contributions | Distributions | Transfers | Loan Repayments | Earnings Gain Or Loss | Fees/Other Activity | Closing Balance 12/31/2003 |
|---|---|---|---|---|---|---|---|---|
| CITISTREET DIVERS BOND I | $ 3.51 | $ .00 | $ .00 | $ .00 | $ .00 | $ .02 | $ -.13 | $ 3.40 |
| TRAV QUALITY BOND PORT | 14.73 | .00 | .00 | .00 | .00 | .05 | -.55 | 14.23 |
| FEDERATED HIGH YIELD | 8.74 | .00 | .00 | .00 | .00 | .40 | -.33 | 8.81 |
| SALOMON BROS VAR HI YIELD | 29.90 | .00 | .00 | .00 | .00 | 1.52 | -1.13 | 30.29 |
| SALOMON BROS INVESTORS | 4.22 | .00 | .00 | .00 | .00 | .55 | -.16 | 4.61 |
| SB DIVERS STRAT INC PORT | 11.35 | .00 | .00 | .00 | .00 | .29 | -.42 | 11.22 |
| Subtotal Employer Discretionary | $72.45 | $ .00 | $ .00 | $ .00 | $ .00 | $2.83 | $ -2.72 | $72.56 |
| Total Account | $10,657.61 | $ .00 | $ .00 | $ .00 | $ .00 | $407.27 | $ -399.69 | $ 10,665.19 |

## Bulletin Board II

New contribution limits for 2004 can help you save even more for retirement. You can now contribute up to $13,000 annually to your retirement savings plan and, if you're age 50 or older, you can boost your contributions by an extra $3,000.

Why is it important to take a "total approach" to retirement planning? Read the latest issue of Plan Perspectives and find out why. While it's common for individuals to regularly review their 401(k) plan accounts, many may neglect to consider their other long-term savings vehicles-like pensions, IRAs and personal savings. A comprehensive review of your retirement assets can help ensure all your investments are working together to meet your financial goals. To learn more, read the new issue of Plan Perspectives by logging on to www.benefitaccess.com, clicking on General Information and selecting Newsletter.

The above information has been obtained from sources we believe to be reliable, but we cannot guarantee its accuracy or completeness.

Due to timing of when contributions were received, certain amounts deducted from your paycheck during the quarter may not be included on your quarterly statement, but will be reflected on your next quarterly statement.

502 M0255NJ42557K    001BLU4460466181

Administered and Serviced by

# citistreet™

A State Street and Citigroup Company

## Participant Quarterly Review
### January 1, 2004 - March 31, 2004

Page 4 of 5

MARY DESMOND        STANDARD AUTOMOTIVE CORP.

HELPLINE: 1-800-962-5046

### Fund Performance

| Investment Choices | Fund Number | Current Period 03/31/2004 | 1 Year Since 03/31/2003 | 5 Year Since 03/31/1999 | 10 Year Since 03/31/1994 | Since Inception | Inception Date |
|---|---|---|---|---|---|---|---|
| SB INTL ALL CAP PORT | 9636 | 4.86 % | 44.86 % | -3.37 % | ---- | 1.90 % | 06/94 |
| SB LARGE CAP VALUE PORT | 9637 | 2.95 % | 40.49 % | .04 % | ---- | 8.53 % | 06/94 |
| FIDELITY ADV GROWTH OPP | 2230 | .07 % | 31.83 % | -6.05 % | 6.42 % | 12.12 % | 11/87 |
| FIDELITY EQUITY INC PORT | 2214 | .24 % | 38.65 % | 3.53 % | ---- | 9.60 % | 08/96 |
| FIDELITY LARGE CAP PORT | 2215 | 1.13 % | 29.62 % | -3.78 % | ---- | 7.15 % | 08/96 |

### Account Activity

*This section shows detail of all activity in your account, organized by type of contribution, for the current period. The Fees/Other Activity column includes any recordkeeping and other administrative services as applicable to your account.*

| | Investment Choices | Opening Balance 01/01/2004 | Contributions | Distributions | Transfers | Loan Repayments | Earnings Gain Or Loss | Fees/Other Activity | Closing Balance 03/31/2004 |
|---|---|---|---|---|---|---|---|---|---|
| **Employer Match 100% VESTED** | CITISTREET DIVERS BOND I | $ 20.73 | $ .00 | $ .00 | $ .00 | $ .00 | $ .45 | $ -.67 | $ 20.51 |
| | TRAV QUALITY BOND PORT | 87.70 | .00 | .00 | .00 | .00 | 1.73 | -2.84 | 86.59 |
| | FEDERATED HIGH YIELD | 55.91 | .00 | .00 | .00 | .00 | 1.00 | -1.83 | 55.08 |
| | SALOMON BROS VAR HI YIELD | 205.65 | .00 | .00 | .00 | .00 | 2.18 | -6.71 | 201.12 |
| | SALOMON BROS INVESTORS | 28.15 | .00 | .00 | .00 | .00 | .69 | -.93 | 27.91 |
| | SB DIVERS STRAT INC PORT | 69.27 | .00 | .00 | .00 | .00 | 1.05 | -2.25 | 68.07 |
| | **Subtotal Employer Match** | $ 467.41 | $ .00 | $ .00 | $ .00 | $ .00 | $ 7.10 | $ -15.23 | $ 459.28 |
| **Employee Pre-Tax Vol. 100% VESTED** | CITISTREET DIVERS BOND I | $ 379.87 | $ .00 | $ .00 | $ .00 | $ .00 | $ 8.40 | $ -12.31 | $ 375.96 |
| | TRAV QUALITY BOND PORT | 1,783.37 | .00 | .00 | .00 | .00 | 35.03 | -57.67 | 1,760.73 |
| | FEDERATED HIGH YIELD | 1,424.47 | .00 | .00 | .00 | .00 | 25.43 | -46.40 | 1,403.50 |
| | SALOMON BROS VAR HI YIELD | 4,252.61 | .00 | .00 | .00 | .00 | 45.16 | -138.72 | 4,159.05 |
| | SALOMON BROS INVESTORS | 515.98 | .00 | .00 | .00 | .00 | 12.56 | -16.88 | 511.66 |
| | SB MONEY MARKET PORTFOLIO | 316.46 | .00 | .00 | .00 | .00 | -.23 | -10.19 | 306.04 |
| | SB DIVERS STRAT INC PORT | 1,452.46 | .00 | .00 | .00 | .00 | 21.97 | -47.16 | 1,427.27 |
| | **Subtotal Employee Pre-Tax Vol.** | $ 10,125.22 | $ .00 | $ .00 | $ .00 | $ .00 | $ 148.32 | $ -329.33 | $ 9,944.21 |
| **Employer Discretionary 100% VESTED** | CITISTREET DIVERS BOND I | $ 3.40 | $ .00 | $ .00 | $ .00 | $ .00 | $ .07 | $ -.11 | $ 3.36 |
| | TRAV QUALITY BOND PORT | 14.23 | .00 | .00 | .00 | .00 | .28 | -.46 | 14.05 |
| | FEDERATED HIGH YIELD | 8.81 | .00 | .00 | .00 | .00 | .16 | -.29 | 8.68 |
| | SALOMON BROS VAR HI YIELD | 30.29 | .00 | .00 | .00 | .00 | .32 | -.98 | 29.63 |
| | SALOMON BROS INVESTORS | 4.61 | .00 | .00 | .00 | .00 | .12 | -.15 | 4.58 |
| | SB DIVERS STRAT INC PORT | 11.22 | .00 | .00 | .00 | .00 | .17 | -.37 | 11.02 |
| | **Subtotal Employer Discretionary** | $ 72.56 | $ .00 | $ .00 | $ .00 | $ .00 | $ 1.12 | $ -2.36 | $ 71.32 |
| | **Total Account** | $ 10,665.19 | $ .00 | $ .00 | $ .00 | $ .00 | $ 156.54 | $ -346.92 | $ 10,474.81 |

# STANDARD AUTOMOTIVE CORP.

MARY DESMOND
124 LINCOLN AV
WINCHENDON, MA    01475

*Statement Period April 1, 2004 - June 30, 2004*

## Your Contributions

### Your Investment Elections for Future Contributions

| | |
|---|---|
| Equity Index Port CL II | 20.0% |
| Janus Capital Apprec Port | 30.0% |
| SB Aggressive Grth Port | 40.0% |
| SB Money Market Portfolio | 10.0% |

## Your Account Activity Summary

The following is a summary of your transactions during this period.
For a detailed history of your daily transactions, visit your plan's Web site at http://www.benefitaccess.com.

| Fund Name | Contributions/ Other Credits (d) | Loan Repayments | Gain/Loss | Transfers | Distributions/ Other Debits (d) | Balance at 06/30/2004 |
|---|---|---|---|---|---|---|
| Citistreet Divers Bond I | $0.00 | $0.00 | $-9.32 | $0.00 | $14.30 | |
| Federated High Yield | $0.00 | $0.00 | $-2.09 | $0.00 | $53.17 | |
| SB Divers Strat Inc Port | $0.00 | $0.00 | $-29.38 | $0.00 | $54.17 | |
| SB Money Market Portfolio | $0.00 | $0.00 | $-0.22 | $0.00 | $11.08 | |
| Salomon Bros Investors | $0.00 | $0.00 | $2.83 | $0.00 | $20.00 | |
| Salomon Bros Var Hi Yield | $0.00 | $0.00 | $-38.26 | $0.00 | $159.06 | |
| TRV Quality Bond Port | $0.00 | $0.00 | $-46.17 | $0.00 | $66.55 | |
| **Total Portfolio Value** | **$0.00** | **$0.00** | **$-122.61** | **$0.00** | **$378.33** | |

*3.61%*

## Your Contribution & Vesting Summary

| Contribution Type | Current Period Contributions | Year-To-Date Contributions | Total Market Value as of 06/30/2004 | x | Vested Percent | = | Vested Market Value as of 06/30/2004 |
|---|---|---|---|---|---|---|---|
| Employee Pre-Tax | $0.00 | $0.00 | $9,468.98 | | 100% | | $9,468.98 |
| Employer Discretionary | $0.00 | $0.00 | $67.85 | | 100% | | $67.85 |
| Employer Match | $0.00 | $0.00 | $437.04 | | 100% | | $437.04 |
| **Total** | **$0.00** | **$0.00** | **$9,973.87** | | | | **$9,973.87** |

## News From CitiStreet

CitiStreet is pleased to provide you with an easier-to-read quarterly statement. If you have questions about your statement, call the Participant Services Center at the toll-free number listed at the top of your statement. Several investment options offered through your retirement plan may have changed. Please see your statement for information about fund selection changes. The latest issue of the Plan Perspectives newsletter is now available on your plan's Web site.

(a)  CitiStreet provides recordkeeping for the plan administrator, insurer, or custodian responsible for your retirement plan or contract.  You do not have an account with CitiStreet or any of its commonly controlled affiliates.
(b)  The estimated "vested balance" is only an illustration, and your plan is not bound by it.  Only your plan administrator (and not CitiStreet) can decide your vested account.
(c)  Individual Account Performance illustrates this account's (but not any fund's) return for the period reported.  Individual Account Performance (IAP) is a measurement of the performance of YOUR entire account for the time you were invested in the plan during the statement period. IAP is calculated based on the performance of your investments during that period, taking into account your activity among investments. This method of calculating performance is used by the financial services industry. Other methods of calculating your IAP may yield different results.
(d)  Credits include forfeitures and Trust-to-Trust transfers, if applicable. Debits include new loans, fees, and forfeitures, if applicable.

| NOTE | Please read this statement carefully. Any error must be reported within 30 days. |
|---|---|

# STANDARD AUTOMOTIVE CORP.

MARY DESMOND
124 LINCOLN AV
WINCHENDON, MA    01475

Statement Period July 1, 2004 - September 30, 2004

## Your Contributions

### Your Investment Elections for Future Contributions

| | |
|---|---|
| Equity Index Port Cl. II | 20.0% |
| Janus Capital Apprec Port | 30.0% |
| SB Aggressive Grth Port | 40.0% |
| SB Money Market Portfolio | 10.0% |

## Your Account Activity Summary

The following is a summary of your transactions during this period.
For a detailed history of your daily transactions, visit your plan's Web site at http://www.benefitaccess.com.

| Fund Name | Balance on 07/01/2004 | Contributions/ Other Credits (d) | Loan Repayments | Gain/Loss | Transfers | Distributions/ Other Debits (d) | Balance on 09/30/2004 |
|---|---|---|---|---|---|---|---|
| Citistreet Divers Bond I | $376.21 | $0.00 | $0.00 | $11.63 | $0.00 | $11.57 | $376.27 |
| Federated High Yield | $1,412.00 | $0.00 | $0.00 | $55.88 | $0.00 | $43.71 | $1,424.17 |
| SB Divers Strat Inc Port | $1,422.81 | $0.00 | $0.00 | $46.52 | $0.00 | $43.82 | $1,425.51 |
| SB Money Market Portfolio | $294.74 | $0.00 | $0.00 | $0.06 | $0.00 | $8.82 | $285.98 |
| Salomon Bros Investors | $526.96 | $0.00 | $0.00 | $-10.73 | $0.00 | $15.47 | $500.78 |
| Salomon Bros Var Hi Yield | $4,192.48 | $0.00 | $0.00 | $223.13 | $0.00 | $131.31 | $4,284.30 |
| TRV Quality Bond Port | $1,748.65 | $0.00 | $0.00 | $42.96 | $0.00 | $53.54 | $1,738.07 |
| **Total Portfolio Value** | **$9,973.87** | **$0.00** | **$0.00** | **$369.45** | **$0.00** | **$308.24** | **$10,035.08** |

## Your Contribution & Vesting Summary

| Contribution Type | Current Period Contributions | Year-To-Date Contributions | Total Market Value as of 09/30/2004 | x | Vested Percent | = | Vested Market Value as of 09/30/2004 |
|---|---|---|---|---|---|---|---|
| Employee Pre-Tax | $0.00 | $0.00 | $9,526.83 | | 100% | | $9,526.83 |
| Employer Discretionary | $0.00 | $0.00 | $68.26 | | 100% | | $68.26 |
| Employer Match | $0.00 | $0.00 | $439.99 | | 100% | | $439.99 |
| **Total** | **$0.00** | **$0.00** | **$10,035.08** | | | | **$10,035.08** |

## News From CitiStreet

On-demand statement information is now available via Benefit Access. Through the web site you can obtain performance data and account summary information from a specific date range within the last fifteen months. If you're age 70 or older, your retirement plans might require you to take a minimum payout. For information about what's required, check your plan or contract, or call CitiStreet's Participant Services Center.

(a)  CitiStreet provides recordkeeping for the plan administrator, insurer, or custodian responsible for your retirement plan or contract.  You do not have an account with CitiStreet or any of its commonly controlled affiliates.
(b)  The estimated "vested balance" is only an illustration, and your plan is not bound by it. Only your plan administrator (and not CitiStreet) can decide your vested account.
(c)  Individual Account Performance illustrates this account's (but not any fund's) return for the period reported.  Individual Account Performance (IAP) is a measurement of the performance of YOUR entire account for the time you were invested in the plan during the statement period. IAP is calculated based on the performance of your investments during that period, taking into account your activity among investments. This method of calculating performance is used by the financial services industry. Other methods of calculating your IAP may yield different results.
(d)  Credits include forfeitures and Trust to Trust transfers, if applicable. Debits include new loans, fees, and forfeitures, if applicable.

| NOTE | Please read this statement carefully. Any error must be reported within 30 days. |
|---|---|

# STANDARD AUTOMOTIVE CORP.

MARY DESMOND
124 LINCOLN AV
WINCHENDON, MA    01475

*Statement Period October 1, 2004 - December 31, 2004*

---

## Your Contributions

### Your Investment Elections for Future Contributions

| | | | | |
|---|---|---|---|---|
| Equity Index Port CL II | 20.0% | Janus Capital Apprec Port | 30.0% | SB Aggressive Grth Port | 40.0% |
| SB Money Market Portfolio | 10.0% | | | | |

---

## Your Account Activity Summary

The following is a summary of your transactions during this period.
For a detailed history of your daily transactions, visit your plan's Web site at http://www.benefitaccess.com.

| Fund Name | Balance on 10/01/2004 | Contributions/ Other Credits (d) | Loan Repayments | Gain/Loss | Transfers | Distributions/ Other Debits (d) | Balance on 12/31/2004 |
|---|---|---|---|---|---|---|---|
| Citistreet Divers Bond I | $376.27 | $0.00 | $0.00 | $3.06 | $0.00 | $25.99 | $353.34 |
| Federated High Yield | $1,424.17 | $0.00 | $0.00 | $49.87 | $0.00 | $100.26 | $1,373.78 |
| SB Divers Strat Inc Port | $1,425.51 | $0.00 | $0.00 | $41.64 | $0.00 | $99.59 | $1,367.56 |
| SB Money Market Portfolio | $285.98 | $0.00 | $0.00 | $0.47 | $0.00 | $19.64 | $266.81 |
| Salomon Bros Investors | $500.78 | $0.00 | $0.00 | $41.87 | $0.00 | $36.47 | $506.18 |
| Salomon Bros Var Hi Yield | $4,284.30 | $0.00 | $0.00 | $186.27 | $0.00 | $303.38 | $4,167.19 |
| TRV Quality Bond Port | $1,738.07 | $0.00 | $0.00 | $9.12 | $0.00 | $119.78 | $1,627.41 |
| **Total Portfolio Value** | **$10,035.08** | **$0.00** | **$0.00** | **$332.30** | **$0.00** | **$705.11** | **$9,662.27** |

---

## Your Contribution & Vesting Summary

| Contribution Type | Current Period Contributions | Year-To-Date Contributions | Total Market Value as of 12/31/2004 | x | Vested Percent | = | Vested Market Value as of 12/31/2004 |
|---|---|---|---|---|---|---|---|
| Employee Pre-Tax | $0.00 | $0.00 | $9,172.42 | | 100% | | $9,172.42 |
| Employer Discretionary | $0.00 | $0.00 | $65.76 | | 100% | | $65.76 |
| Employer Match | $0.00 | $0.00 | $424.09 | | 100% | | $424.09 |
| **Total** | **$0.00** | **$0.00** | **$9,662.27** | | | | **$9,662.27** |

---

## News From CitiStreet

New contribution limits for 2005 can help you save even more for retirement. You can now contribute up to $14,000 annually to your retirement savings plan and, if you're age 50 or older, you can save an extra $4,000. In February, the MFS Emerging Growth Portfolio will be eliminated and will merge with the MFS Mid Cap Growth Portfolio. Log on to your plan's Web site to read the new issue of the Plan Perspectives newsletter.

(a)  CitiStreet provides recordkeeping for the plan administrator, insurer, or custodian responsible for your retirement plan or contract. You do not have an account with CitiStreet or any of its commonly controlled affiliates.
(b)  The estimated "vested balance" is only an illustration, and your plan is not bound by it. Only your plan administrator (and not CitiStreet) can decide your vested account.
(c)  Individual Account Performance illustrates this account's (but not any fund's) return for the period reported. Individual Account Performance (IAP) is a measurement of the performance of YOUR entire account for the time you were invested in the plan during the statement period. IAP is calculated based on the performance of your investments during that period, taking into account your activity among investments. This method of calculating performance is used by the financial services industry. Other methods of calculating your IAP may yield different results.
(d)  Credits include forfeitures and Trust to Trust transfers, if applicable. Debits include new loans, fees, and forfeitures, if applicable.

| NOTE | Please read this statement carefully. Any error must be reported within 30 days. |
|---|---|

## Tom Ziobrowski

**From:**  Tom Ziobrowski [ziobrowskit@ranor.com]
**Sent:**  Thursday, January 27, 2005 3:29 PM
**To:**  'Morton Batt'
**Cc:**  Mary Desmond (desmondm@ranor.com); Paul Watts (wattsp@ranor.com)
**Subject:** RE: Standard Automotive 401(k) Distribution

Mort,
    It is our understanding that you are the plan trustee, and have been since December of 2003. What service did ALS & Assoc provide in 2004 to justify invoicing $256,933.21. That's a large sum of money. What did we pay for?

Tom Ziobrowski
Ranor, Inc.
Bella Drive
Westminster, MA 01473
Tel: (978) 874-0591 x121
Fax: (978) 874-2748
Email: ziobrowskit@ranor.com

IMPORTANT NOTICE:
This email, together with any attachments, is confidential. It may be legally privileged, and is for the intended recipient only. Access, disclosure, copying, or distribution of it by anyone else is prohibited and may be a criminal offense. Please delete if obtained in error, and email a notification to the sender.
    -----Original Message-----
**From:** Morton Batt [mailto:morton.batt@psinet.com]
**Sent:** Thursday, January 27, 2005 3:08 PM
**To:** Tom Ziobrowski
**Cc:** MICHAEL KASSAK; Anthony L. Scialabba, Esq.; Mary Desmond; Paul Watts
**Subject:** Re: Standard Automotive 401(k) Distribution

Dear Tom:

    The following fees and expenses were paid from the plan during 2004:

ALS & Assoc $256,933.21
White & Williams (retainer) $75,000.00
Morton Batt    $23,286.70
WSM&P (accountant) $3,651.50

Mort Batt

    ----- Original Message -----
**From:** Tom Ziobrowski
**To:** Morton Batt
**Cc:** Paul Watts ; Mary Desmond
**Sent:** Friday, January 21, 2005 10:16 AM
**Subject:** Standard Automotive 401(k) Distribution

Mort,
    We are in receipt of our 401K plan Quarterly Statements from Citistreet. They have taken another 6.65% of the fund in fees and distributions. The only people not getting a distribution are the participants of the plan. The plan is still at square one, there doesn't appear to be resolution in sight and by our estimation, this whole thing has cost the plan about a half million dollars, maybe more. How

1/28/2005

can Citistreet ignore us, and then take huge fees on a quarterly basis. Do they think we don't notice thousands of dollars being removed from our funds? If we were allowed to take the distribution two years ago, and pay the tax penalty, it would have been cheaper than the funds we have lost to "distributions".

As the Trustee to our plan, we are requesting from you an explanation as to why WE keep seeing such great amounts of our funds being eroded from our plan each and every quarter, while we patiently wait for some real action. The participants want to know where the fees go every quarter after they are withdrawn [Distributions/ Other Debts (d)]. The statement reflects the footnote (d) to read: "Credits include forfeitures and Trust to Trust transfers, if applicable. Debits include new loans, fees, and forfeitures, if applicable." Please offer an explanation to what this exactly means, who distributes the funds, who receives the funds. In short, WE are asking for an accounting of the money being siphoned from our account.

Members of the 401(k) committee have expressed an interest in meeting with you and possibly the lawyer you have hired, face to face at your location to discuss the current condition of the distribution and the proposed approaches to a resolution. We cannot understand how Citistreet is getting away with this.

Mort, this just doesn't pass the smell test.

Citistreet must be in violation of some rule of law which prohibits this activity. There are federal laws which govern the rules for the administration of the 401(k). This is our money. If their recordkeeping is in such a state where they are unable to reconcile a distribution, how can they be allowed to be in the banking business?

We would like a meeting. Please let me know what your availability is.


Tom Ziobrowski
Ranor, Inc.
Bella Drive
Westminster, MA 01473
Tel: (978) 874-0591 x121
Fax: (978) 874-2748
Email: ziobrowskit@ranor.com

IMPORTANT NOTICE:
This email, together with any attachments, is confidential. It may be legally privileged, and is for the intended recipient only. Access, disclosure, copying, or distribution of it by anyone else is prohibited and may be a criminal offense. Please delete if obtained in error; and email a notification to the sender.