UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARY DESMOND, THOMAS ZIOBROWSKI, AND PAUL WATTS, on their own behalf and on behalf of other participants in the defendant ERISA Plans, <br><br> Plaintiffs, <br><br> v. <br><br> MORTON C. BATT, ANTHONY L. SCIALABBA, CITISTREET, LLC, WHITE & WILLIAMS, LLP, SCIALABBA & MORRISON, P.C., THE STANDARD AUTOMOTIVE 401(K) PLAN, AND THE STANDARD AUTOMOTIVE EMPLOYER CONTRIBUTION PLAN, <br><br> Defendants. | Civil Action No. 05-10355-NG |

## CITISTREET, LLC'S ANSWER TO THE COMPLAINT

Defendant CitiStreet, LLC ("CitiStreet") responds to the Complaint ("Complaint") of

Plaintiffs Mary Desmond, Thomas Ziobrowski, and Paul Watts (the "Plaintiffs") as follows:

### FIRST DEFENSE

### INTRODUCTION

1.       CitiStreet lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 1 of the Complaint.

2.       CitiStreet admits that Plaintiffs purport to bring an action under the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), for injunctive and monetary

relief based upon alleged breaches of fiduciary duty.  CitiStreet denies that it is an ERISA

fiduciary or that it breached any fiduciary duty.  CitiStreet otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

paragraph 2 of the Complaint.

## THE PARTIES

3.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 3 of the Complaint.

4.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 4 of the Complaint.

5.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 5 of the Complaint.

6.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 6 of the Complaint.

7.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 7 of the Complaint.

8.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 8 of the Complaint.

9.    Admitted.

10.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 10 of the Complaint.

11.    CitiStreet lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 11 of the Complaint.

12.    CitiStreet admits that the Standard Automotive Corporation 401(k) Plan and the Standard Automotive Employer Contribution Plan are named defendants in the above-captioned lawsuit.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

## JURISDICTION

13.     Paragraph 13 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet admits that Plaintiffs purport to bring an action under ERISA.

14.     Paragraph 14 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint.

## STATEMENT OF FACTS

15.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.     Paragraph 16 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.     CitiStreet denies the allegation that CitiStreet currently serves or has ever served as a fiduciary under the Standard Automotive Corporation 401(k) Plan or the Standard Automotive Employer Contribution Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Complaint.

19.     CitiStreet admits that it is a "party in interest" with respect to the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19 of the Complaint.

20.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

21.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     CitiStreet denies that it failed or refused to perform any obligation to plaintiffs concerning "roll over" distributions with respect to the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 of the Complaint.

23.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint.

26.     CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 26 of the Complaint. CitiStreet denies that it caused or permitted the Standard Automotive Corporation 401(k) Plan to pay over $800,000 in excessive fees and expenses since January 2003.  CitiStreet lacks

knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint to the extent they apply to the other defendants.

## COUNT I

27.     CitiStreet incorporates by reference its answers to paragraphs 1 through 26 as if fully set forth herein.  Further answering, CitiStreet states that to the extent that this Count includes allegations against other defendants, no response is required.

28.     Paragraph 28 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 28 of the Complaint to the extent that the allegations apply to CitiStreet. CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 to the extent they apply to other defendants.

29.      Paragraph 29 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 29 of the Complaint to the extent that the allegations apply to CitiStreet and concern the Standard Automotive Corporation 401(k) Plan. CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 to the extent they apply to other defendants or concern the Standard Automotive Corporation Employer Contribution Plan.

30.     Paragraph 30 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 30 of the Complaint to the extent that the allegations apply to CitiStreet and concern the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30

of the Complaint to the extent they apply to other defendants or concern the Standard

Automotive Corporation Employer Contribution Plan.

31.    Paragraph 31 of the Complaint states a conclusion of law to which no response is

required.  To the extent a response is required, CitiStreet denies the allegations contained in

paragraph 31 of the Complaint to the extent that the allegations apply to CitiStreet and concern

the Standard Automotive Corporation 401(k) Plan. CitiStreet lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 31 to the extent

they apply to other defendants.

**<u>COUNT II</u>**

32.    CitiStreet incorporates by reference its answers to paragraphs 1 through 31 as if

fully set forth herein.  Further answering, CitiStreet states that to the extent that this Count

includes allegations against other defendants, no response is required.

33.    Paragraph 33 of the Complaint states conclusions of law to which no response is

required.  To the extent a response is required, CitiStreet denies the allegations contained in

paragraph 33 of the Complaint to the extent that the allegations apply to CitiStreet and concern

the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 33 to the extent

they apply to other defendants or concern the Standard Automotive Corporation Employer

Contribution Plan.

34.    Paragraph 34 of the Complaint states a conclusion of law to which no response is

required.  To the extent a response is required, CitiStreet denies the allegations contained in

paragraph 34 of the Complaint to the extent that the allegations apply to CitiStreet and concern

the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 34 to the extent they apply to other defendants or concern the Standard Automotive Corporation Employer Contribution Plan.

35.     Paragraph 35 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 35 of the Complaint to the extent that the allegations apply to CitiStreet and concern the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 to the extent they apply to other defendants or concern the Standard Automotive Corporation Employer Contribution Plan.

36.     Paragraph 36 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 36 of the Complaint to the extent that the allegations apply to CitiStreet and concern the Standard Automotive Corporation 401(k) Plan. CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 to the extent they apply to other defendants or concern the Standard Automotive Corporation Employer Contribution Plan.

## COUNT III

37.     CitiStreet incorporates by reference its answers to paragraphs 1 through 36 as if fully set forth herein.  Further answering, CitiStreet states that to the extent that this Count includes allegations against other defendants, no response is required.

38.     Paragraph 38 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

39.     Paragraph 39 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 39 of the Complaint to the extent that the allegations apply to CitiStreet and concern the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 to the extent they apply to other defendants or concern the Standard Automotive Corporation Employer Contribution Plan.

40.     Paragraph 40 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint.

41.     Paragraph 41 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 41 of the Complaint to the extent that the allegations apply to CitiStreet and concern the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 to the extent they apply to other defendants or concern the Standard Automotive Corporation Employer Contribution Plan.

42.     Paragraph 42 of the Complaint states a conclusion of law to which no response is required.  To the extent a response is required, CitiStreet denies the allegations contained in paragraph 42 of the Complaint to the extent that the allegations apply to CitiStreet and concern

the Standard Automotive Corporation 401(k) Plan.  CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 to the extent they apply to other defendants or concern the Standard Automotive Corporation Employer Contribution Plan.

## COUNT IV

43.    CitiStreet incorporates by reference its answers to paragraphs 1 through 42 as if fully set forth herein.  Further answering, CitiStreet states that this Count consists of allegations against other defendants and, therefore, no response is required.

44.    Paragraph 44 of the Complaint consists of allegations against other defendants and, therefore, no response is required.  To the extent a response is required, CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint.

45.    Paragraph 45 of the Complaint consists of allegations against other defendants and states a conclusion of law; therefore, no response is required.  To the extent a response is required, CitiStreet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Complaint.

## SECOND DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

Plaintiffs' claims are barred by applicable statutes of limitations.

## FOURTH DEFENSE

Plaintiffs' claims are barred because Plaintiffs' claimed injuries and damages were not proximately caused by any acts or omissions of CitiStreet.

## FIFTH DEFENSE

Plaintiffs' claims are barred because Plaintiffs have not suffered any injury cognizable under 29 U.S.C. §§ 1109 and 1132(a) & (c).

## SIXTH DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver, laches and/or estoppel.

## SEVENTH DEFENSE

CitiStreet has never been an ERISA fiduciary with regard to the Standard Automotive Corporation 401(k) Plan or the Standard Automotive Employer Contribution Plan, and Plaintiffs therefore have no claim under ERISA against CitiStreet.

## EIGHTH DEFENSE

All of CitiStreet's conduct affecting the Standard Automotive Corporation 401(k) Plan was undertaken pursuant to a Recordkeeping Services Agreement dated January 1, 2000 (a copy of which is attached as Exhibit A to this Answer). Under the terms of that agreement, all claims against CitiStreet arising out of CitiStreet's performance of services with respect to Standard Automotive Corporation 401(k) Plan assets are subject to final and binding arbitration. Plaintiffs' claims against CitiStreet are subject to this arbitration requirement.

## NINTH DEFENSE

CitiStreet reserves the right to assert such other defenses as may be warranted in light of information generated during the course of litigation.

WHEREFORE, CitiStreet prays that the Complaint be dismissed, that judgment be entered in CitiStreet's favor, and that CitiStreet be awarded its costs of action, including a reasonable attorney's fee.

Respectfully submitted,

CITISTREET, LLC

By its attorneys,

/s/ Henry C. Dinger
Henry C. Dinger (BBO # 125340)
Joshua L. Stayn (BBO # 652344)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Tel: (617) 570-1000
Fax: (617) 523-1231

Dated: April 18, 2005

LIBA/1529064.2

# EXHIBIT A



## RECORDKEEPING SERVICES AGREEMENT

**RECORDKEEPING SERVICES AGREEMENT** dated January 1, 2000 (the "Agreement"), by and among Standard Automotive Corporation (the "Employer"), and Standard Automotive Corporation acting as plan administrator (the "Plan Administrator") and Copeland Associates, Inc., doing business as Smith Barney Plan Services (the "Service Provider").

The Employer has established, or is in the process of establishing, the Standard Automotive Corporation 401(K) Plan (the "Plan"), and represents that it has, or will, as Plan sponsor, designate the Plan Administrator to act on behalf of the Employer with respect to the Plan as Plan Administrator pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). If for any reason a Plan Administrator is not designated with respect to this Plan, the Employer shall be deemed to execute this Agreement in its capacity as both sponsor and as the Plan Administrator.

This Agreement is not intended to govern or be construed as affecting the allocation of obligations and responsibilities with respect to the operation of the Plan between the Employer and the Plan Administrator but sets forth only the basis upon which the Service Provider is engaged to provide services to the Plan and its Participants (as hereinafter defined). Accordingly, the Plan Administrator has agreed to engage the Service Provider to provide certain recordkeeping and administrative services to the Plan in accordance with the terms and conditions set forth in this Agreement.

## SECTION 1. NO LEGAL AND TAX ADVICE

The Employer and the Plan Administrator are responsible for obtaining independent legal and tax advice with respect to the operation of the Plan, including (but not limited to) the effect of this Agreement, the Prototype Plan Documents (as defined in Section 2.1), if applicable, the Administrative Guide (the "Administrative Guide"), and all applicable forms. Neither the Service Provider nor any of its Affiliates (as defined in Section 12.1) provides legal or tax advice, and gives no assurances to the Employer, the Plan Administrator, any Participant or Participant's beneficiary, or to any third party, as to the legal effect of any documents, forms or administrative procedures associated with the performance by the Service Provider of its obligations under this Agreement. The Service Provider disclaims any warranties, express or implied, concerning the legal or tax advice actually obtained by the Employer or the Plan Administrator.

## SECTION 2. PLAN DESIGN AND INSTALLATION

**2.1 Duties of the Service Provider.** Based upon the information provided and the elections made by the Employer, the Service Provider will:

- At the Employer's option, provide a prototype plan document, trust agreement, adoption agreement and summary plan description ("Prototype Plan Documents"), based upon Plan design information submitted by the Employer;

- Provide forms (e.g., loan and distribution request forms) and the Administrative Guide to the Employer; and

- Prepare enrollment packages and provide to the Employer the enrollment services described in Section 4;

- The plan sponsor may revise the Adoption Agreement prior to adoption one time without charge, additional changes will be subject to an agreed upon fee.

42557

**2.2 Duties of the Employer.** The Employer will:

• If the Employer already has an existing Plan (a "Pre-Existing Plan"), provide copies of the most recent set of all Plan documents, including amendments, to the Service Provider. The Service Provider may rely exclusively upon the documents provided. To the extent that a copy of an amendment or other document change is not provided to the Service Provider, the Service Provider can not be imputed to have knowledge of the amendment or document change.

• If the Employer elects to adopt a Smith Barney prototype document, the Employer will accurately reflect plan design elections on the Plan Design Checklist (a form filled out in conjunction with the Service Provider setting the parameters of the Plan), and adopt or cause to be adopted by the Board of Directors (if applicable) the Plan drafted from the checklist.

• If the Employer has a Pre-Existing Plan which is being transferred onto the Prototype Plan Document, identify benefits, rights or features of the Pre-Existing Plan not covered by the Prototype Plan Document.

• Provide to the Service Provider complete and accurate employee census data for all employees (including employees of other Employers who are members of a Controlled Group of Corporations as that term is defined in Sections 414(b), (c), (m), (n) and (o) of the Internal Revenue Code of 1986, as amended (the "Code"), if applicable) (all such employees covered by the Plan, "Employees").

• Obtain independent legal review of all documents provided by the Service Provider.

• Make the required Notice to Interested Parties available to all eligible Employees.

• Obtain and maintain a surety bond as required by ERISA.

• Provide information and act in accordance with the Administrative Guide.

**2.3 On the conversion of an existing Plan.** When an Employer has an existing Plan, in addition to providing the Service Provider with copies of the Plan document as required above, the Employer must provide, or arrange to provide to the Service Provider a final Plan valuation prepared by the prior recordkeeper. The final valuation must be presented to the Service Provider in a format acceptable to the Service Provider no later than twelve (12) weeks after the assets are transferred from the prior trustee. **If the Employer fails to provide the final valuation to the Service Provider in the time specified, the Service Provider may, at its discretion, return all plan assets to the Employer on one (1) weeks written notice, terminating this Agreement.**

# SECTION 3. RESPONSIBILITIES OF THE EMPLOYER AND THE PLAN ADMINISTRATOR

**3.1 Fiduciary Obligations.** The Plan Administrator represents that it has assumed the duties and responsibilities of Plan Administrator (as that term is defined in the Plan and in ERISA) with respect to the Plan. The Employer and the Plan Administrator will each hold the Service Provider harmless from any claims against the Service Provider arising out of their respective activities in the performance of their respective duties with respect to the Plan, including their failure to perform such duties. The Service Provider is not a fiduciary of the Plan.

**3.2 Employer's Obligations to Provide Information to the Service Provider.** In order to permit the Service Provider to provide the recordkeeping services covered by this Agreement, the Plan Administrator shall either provide or cause to be provided to the Service Provider on an ongoing basis accurate, complete and timely information on all matters relating to (i) the identity of Employees as they become eligible to participate in the Plan, and those Employees electing to participate in the Plan (the "Participants") and (ii) the operation of the Plan generally, that impact the Service Provider's responsibilities hereunder. This shall include, but not be limited to, data about:



- Individual Participants sufficient for the establishment of individual Participant accounts (including but not limited to: name, social security number, date of birth, marital status, date of hire, date of re-hire, adjusted date of hire, year to date compensation, annualized compensation and home address);
- Participant investment allocation elections under the Pre-Existing Plan;
- Participant contributions to, and withdrawals and distributions from, such accounts under the Pre-Existing Plan;
- The last plan year end valuation for the year prior to changing recordkeeper;
- Participant investment allocation elections prior to the submission of contributions;
- The calculation of a participant's adjusted date of hire;
- Participant loan initiation and repayment data including but not limited to loan paperwork procedures and loan interest rate calculations.
- Participant's termination of employment;
- Hardship withdrawal qualifications; and
- The investment alternatives available to Participants.

In the event that the Service Provider requires additional information in connection with its responsibilities hereunder, it will promptly notify the Plan Administrator of such requirements.

**3.3  Form of Delivery.**  All information to be provided under Section 3.2 by or on behalf of the Plan Administrator or the Employer shall be provided in the form, format and frequency specified by the Service Provider.

**3.4  Allocation Information.**  The Employer shall provide the information requested in Section 3.2 prior to the date contributions are submitted to the Service Provider.  If contributions are submitted prior to participant investment and enrollment elections have been received by the Service Provider, the Service Provider shall not be obligated to process the contributions.  At the sole discretion of the Service Provider, such contributions may be returned to the Employer or deposited in a default fund expressly established by the Employer for the purpose of receiving contributions without participant investment allocation.

## SECTION 4.  ENROLLMENT

**4.1  Duties of the Service Provider.**  The Service Provider will provide to each Employee designated by the Employer an enrollment kit to facilitate such Employee's enrollment to participate in the Plan, and provide such enrollment support services as shall be agreed upon with the Employer.  These enrollment services shall be performed in English, unless otherwise agreed in writing.

**4.2  Duties of the Employer.**  To facilitate the enrollment process, the Employer will cooperate with the Service Provider in its efforts to communicate the Plan to all eligible Employees, including its distribution of enrollment materials and Summary Plan Descriptions.

**4.3  One on One Enrollment.**  Individual, one on one enrollment, if available in a geographic region may be provided for a separately negotiated fee.

## SECTION 5.  ADMINISTRATIVE RESPONSIBILITIES OF THE SERVICE PROVIDER

**5.1  Recordkeeping Obligations.**  The Service Provider shall act as recordkeeper of the Plan, and use due care in providing the services required hereunder.

3

**5.1.1 Account Maintenance.** The Service Provider shall establish and maintain records of Plan transactions based upon the information provided to it from time to time by or on behalf of the Employer. Such records shall set forth Plan transactions in each individual Participant account, the posting of contributions and allocation of contributions among the investment vehicles designated by the Participant, Participant-directed inter-fund transfers, loans and loan balances, loan repayments and repayment amounts, calculation of the amount and allocation of employer matching contributions, withdrawals, terminations and all other transactions under the Plan that effect the balance of an individual Participant's account. The Service Provider will process the periodic repayment amount for all Plan loans and the allocation of such repayment among the applicable investment alternatives, and shall advise the Employer of the resulting payroll deduction to be made for such purposes. The Service Provider will process the Employer's authorizations for benefit payments, hardship withdrawals (if applicable), return of excess contributions, and loans (if applicable) in accordance with the Employer's instructions and Plan provisions.

**5.1.2 Valuation.** The Service Provider shall determine the value of individual Participant accounts as of each Valuation Date designated by the Plan Administrator under the Plan.

**5.1.3 Reports.** Except as otherwise noted herein, the Service Provider shall use the records maintained by it to generate the following reports:

**(i) To the Participants:** The Service Provider will generate, each calendar quarter Participant statements and forward such statements to the Employer, or to each Participant for an additional fee to be agreed upon. Such statements shall reflect the Participant's prior statement account balance, all Plan activity processed during the quarter, and the Participant's account balance as of the current Valuation Date. The Service Provider will also supply an amortization schedule to each Participant at the time such person takes a Plan loan.

**(ii) To the Employer:** The Service Provider shall deliver to the Employer a periodic summary report of Plan activity, reflecting all recordkeeping activities since the prior report. The Service Provider will provide to the Plan Administrator or any agent of the Plan Administrator designated in writing (the "Designated Agent") the following information: amounts transferred pursuant to a Participant-elected inter-fund transfer; contributions allocated to each investment alternative; transfers, distributions, loans issued, loan payments received, investment gains/losses, expenses, ending balance and vested balance; the amounts and other information necessary to prepare benefit checks for disbursement upon withdrawal of funds or termination payments from the Plan; and the disbursement of funds resulting from Participant loans from Plan accounts.

**(iii) To the Employer with respect to tax matters:** The Service Provider will provide to the Employer or its Designated Agent any information necessary to permit the Employer or its Designated Agent (a) to produce 1099-R tax forms for each Participant who obtained a distribution from the Plan, (b) to calculate distributions of minimum amounts required under Section 401(a)(9) of the Internal Revenue Code of 1986, as amended (the "Code"), and (c) to assist the Plan Administrator in preparation of the annual Form 5500 tax return (and, if requested by the Plan Administrator, for fees to be agreed upon, completion of a draft Form 5500 and filing package on the Plan Administrator's behalf based upon information provided by the Plan Administrator). The Service Provider shall rely exclusively upon the Plan Administrator to determine if contributions are timely made or if Plan Loans are in default.

Each report and statement issued to the Employer and each Participant by the Service Provider shall be deemed correct unless the Service Provider receives written notice of any error, incompleteness or inaccuracy in the report or statement within thirty (30) calendar days after the receipt thereof by the Employer or Participant.

**5.1.4 Testing:** The Service Provider will reconcile its records of Plan transactions to records maintained on behalf of the Plan trust on a quarterly basis and furnish a copy of each such



reconciliation to the Employer. In addition, if applicable, the Service Provider will perform Actual Deferral Percentage testing in accordance with Code Section 401(k)(3); Actual Contribution Percentage testing in accordance with Code Section 401(m); test for the Limit on Elective Deferrals under Code Section 402(g); and testing on the Annual Additions Limit in accordance with Code Section 415(c).

The Employer shall complete and return to the Service Provider the census data request package necessary to perform the above listed tests, within 30 calendar days after year end. If the Employer fails to provide Service Provider with the requested census data within 30 calendar days after year end, the Service Provider is relieved of all testing responsibility for that plan year.

Minimum Coverage testing in accordance with Code Section 410(b)(1)(A) and (B) may be provided for an additional agreed upon fee based upon the controlled group data/information the Employer provides. Such data/information provided by the Employer shall constitute data for the entire Code Section 414 group.

**The Service Provider will not perform the Average Benefits test under Code Section 410(b)(2) and will not test the Code Section 415 limit for any other Employer plan or perform combined testing under Code Section 415(e) unless specifically agreed upon in writing for an additional agreed upon fee.**

**5.1.5  Return of Contributions for Mistake of Fact.** The Service Provider will, upon written instructions from the Plan Administrator return to the Employer contributions made by Mistake of Fact or Law based upon the Employers determination of such a Mistake. The Service Provider shall charge a processing fee based upon our standard hourly rates to process the Plan Administrator's instructions. Any return of contributions under this section may be subject to applicable surrender charges or deferred sales charges under the terms of the Plan investments.

**5.2  Limitations on Reports and Testing.** The Service Provider shall draft the Form 5500 (if requested by the Plan Administrator pursuant to Section 5.1.3(iii)) and/or conduct the testing described in Section 5.1.4 only if the Service Provider maintains the records for all assets of the Plan. In addition, if the Service Provider has maintained the Plan's records for less than the full calendar year, it shall consult with the Employer to determine on a case by case basis, what testing, if any, can be done by the Service Provider, and how it shall be conducted.

**5.3  Additional Employer Obligations.** The Employer shall base contributions and approve benefit claims, domestic relations orders, loan requests, and other Participant communications in strict conformity with the terms of the Plan and ERISA; accord uniform treatment to persons similarly situated; and maintain, at least for the period required by Section 6050 of the Code and Section 413 of ERISA, detailed and accurate records of determinations made.

**5.4  Employer Tax, Reporting and Compliance Obligations.** Notwithstanding the services to be provided by the Service Provider hereunder, it shall remain the obligation of the Employer and the Plan Administrator to operate the Plan in compliance with the requirements of the Plan documents, ERISA and the Code including, but not limited to, the satisfaction of qualifications tested for under Section 5.1.4 and the prompt filing of accurate and complete tax and reporting forms under ERISA and the Code, as applicable.

**5.5  Errors.** The Service Provider will not be responsible for errors or added costs or delays incurred by it resulting from inaccurate or untimely information provided by or on behalf of the Employer hereunder. Should the Service Provider receive inaccurate or untimely information provided by or on behalf of the Employer that impacts the Plan record base and requires a cancellation and revision, in whole or in part, of the Plan records, an additional charge based on the time and expense incurred by the Service



Provider may be made; provided, however, that no such cancellation and revision or corresponding charge shall be made until approved in writing by the Plan Administrator.

## SECTION 6. HELPLINE

**6.1 Services.** During designated hours, Participants may access a voice response unit by telephone, and may be provided with the option of speaking with a representative (the "Helpline Representative "). The Service Provider may, from time to time, electronically record all telephone conversations between its employees and Participants, to the extent such recording is not prohibited by applicable law. The Employer hereby consents to such recordings.

**6.2 Secured Calls.** A call to the Voice Response Unit will be considered to be a Secured Call if the person making the call supplies a SSN (social security number) and PIN (personal identification number) which corresponds to the SSN and PIN of a Participant as input into the voice response unit. A call to the Helpline Representative will be considered to be a Secured Call if the person making the call supplies a SSN (social security number) and DoB (date of birth) which corresponds to the SSN and DoB of a Participant as stated to the Helpline Representative. Transactions may only be made through Secured Calls. The Service Provider may rely upon any instructions it receives through a Secured Call.

**6.3 Miscellaneous.** The Service Provider shall direct Participants with questions related to investments or investment options under the Plan to the Plan Administrator.

## SECTION 7. AMENDMENT AND TERMINATION

**7.1 Plan Amendments.** If the Employer has chosen to use the Prototype Plan Documents, the Service Provider will prepare amendments and restatements of such documents to conform to legal or regulatory changes, and the Employer shall not amend such documents without the concurrence of the Service Provider. If the Employer uses the prototype plan document, and desires to make an employer initiated change in plan design, the Employer shall pay the Service Provider the fee for such amendments as set forth in the fee schedule. If the Employer has chosen not to use the prototype plan document or has customized the document , it shall be the responsibility of the Employer to see that such amendments are properly adopted and to promptly notify all Participants and beneficiaries, and the Service Provider, of all such amendments. The Employer shall promptly provide the Service Provider with copies of all such amendments.

**7.2 Plan Termination.** The Employer has the obligation to notify the Service Provider and all Plan Participants promptly of the effective date of termination of the Plan.

## SECTION 8. CONFIDENTIALITY

Subject to the provisions of Section 22 hereof, the Service Provider shall maintain the confidentiality of all information provided by or on behalf of the Employer. Upon specific written authorization from the Plan Administrator, the Service Provider may provide oral and written responses to agents of the Employer.

## SECTION 9. FEES FOR RECORDKEEPING AND OTHER SERVICES

**9.1 Recordkeeping Charges.** The Plan Administrator has agreed to pay the Service Provider the Recordkeeping Charges set forth in the attached Schedule of Fees. The Service Provider reserves the right to modify these charges, provided, however, that the Plan Administrator shall be notified in writing at least 60 days in advance of any such modification.

**9.2 Other Services.** For all other administrative support services not covered by this Agreement, the Service Provider shall supply a cost quote for such service requested by the Plan Administrator. Before

6

such additional service shall be provided, the Plan Administrator shall submit a written authorization to proceed with the service and shall indicate acceptance of the fee quoted therefor. Additionally, to the extent agreed upon, a portion of such fees shall be paid in advance of the performance of the requested service.

9.3  **Payment of Fees.** If fees or charges hereunder are not paid within 60 days from the date of the invoice by the Service Provider, the Plan Administrator hereby authorizes the Service Provider without notice or other additional action on the part of the Service Provider or the Plan Administrator, to deduct the amount of such unpaid fees and charges from Plan assets due for that invoice and all future charges without further notice.

Additionally, in the event that the Service Provider is notified that the Plan Sponsor has filed for protection under the Bankruptcy Code, such notice shall constitute an instruction and authorization for the Service Provider to deduct all pending and future service fees from Plan assets.

In the event the Service Provider receives a notice of Plan Termination in accordance with Section 7.2 of the Agreement, such notice shall constitute an instruction and authorization for the Service Provider to deduct all pending and future service fees from Plan assets prior to the termination of the Plan.

## SECTION 10. AUTHORITY

The Plan Administrator, the Employer and the Service Provider each represents and warrants to each of the other parties to this Agreement that it has all necessary authority to enter into this Agreement, and that this Agreement is a valid and binding obligation of such party.

## SECTION 11. TERM

Except as controlled by Section 2.3, this Agreement shall be effective as of the date hereof, and shall remain in full force and effect until amended or terminated. This Agreement may be terminated by the Plan Administrator or the Service Provider upon 30 days advance written notice. This Agreement shall be binding upon all successors and assigns of the Employer and the Plan Administrator.

## SECTION 12. INDEMNIFICATION

12.1  **The Service Provider.** The Service Provider agrees to indemnify and hold harmless each Employer Party (as defined below) from and against any loss, liability, damage or expense (including reasonable attorney's fees and disbursements) or other liabilities (collectively, "Losses") resulting or arising from any material breach by the Service Provider of any representation, warranty, or covenant contained in this Agreement. An "Employer Party" means the Employer, the Plan Administrator, and their respective officers, directors, employees, agents and Affiliates. An "Affiliate" of a party means any entity or person controlling, controlled by or under common control with such party.

12.2  **The Employer and the Plan Administrator.** Each of the Employer and the Plan Administrator, jointly and severally, agrees to indemnify and hold harmless each Service Provider Party (as defined below) from and against any Losses resulting or arising from (i) a failure by an Employer Party to comply with the terms of the Plan, (ii) a violation by an Employer Party or the Plan of the requirements of applicable federal and state laws, (iii) the failure of the Employer or the Plan Administrator to provide Service Provider with complete and correct information on a timely basis in accordance with this Agreement, (iv) a Service Provider Party's reliance on inaccurate information provided by the Employer or the Plan Administrator (or any trustee, recordkeeper, or other third party representing the Plan or the Trust, or any Participant or beneficiary), (v) the Service Provider's making benefit payments based on instructions it reasonably believes are authorized, (vi) work performed prior to the date of this Agreement; and work performed by any person other than a Service Provider Party; or (vii) any material breach by the Employer or the Plan Administrator of any representation, warranty or covenant contained in this Agreement. A "Service

7

Provider Party" shall include Smith Barney Inc. and its Affiliates and any of their respective officers, directors, trustees, employees and agents.

**12.3 Procedures.** (i) Whenever any claim shall arise for indemnification under Section 12.1 or 12.2 above, the party or parties seeking indemnification (the "Indemnified Party") shall notify the party or parties from whom indemnification is sought (the "Indemnifying Party") within a reasonable time after such Indemnified Party has actual knowledge of the facts constituting the basis for such claim; provided that failure to provide notice of such claim on a timely basis shall not limit the Indemnified Party's right to indemnity except to the extent that the Indemnifying Party is actually prejudiced thereby. Any notice of claim shall specify in reasonable detail all material facts known to the Indemnified Party giving rise to such indemnification claim.

(ii) With respect to any such claim, the Indemnifying Party shall be entitled (without prejudice to the right of the Indemnified Party to participate through counsel of its own choosing but at its own expense) to contest or defend such claim at the expense of the Indemnifying Party and through counsel selected by the Indemnifying Party. If the Indemnifying Party fails to provide notice of its intention to defend within thirty (30) days following delivery of the notice of claim, the Indemnified Party may defend such claim and shall be entitled to reimbursement of its costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements.

## SECTION 13. ASSIGNMENT

No assignment of this Agreement shall be made by any party without the written consent of all of the others. Any attempted assignment shall be void and of no effect provided, however, that the Service Provider may assign all or part of its obligations under Section 4 to one or more of its subsidiaries or Affiliates following 30 days' prior written notice thereof to the Plan Administrator.

## SECTION 14. GOVERNING LAW AND INTERPRETATION

THIS AGREEMENT SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK EXCEPT AS SUPERSEDED BY FEDERAL LAWS OF THE UNITED STATES.

This Agreement shall be construed as though jointly drafted by the parties and according to the fair intent of the language as a whole and not for or against any party. This Agreement shall not be construed to allow any action that is contrary to the provisions of the Plan or applicable law.

## SECTION 15. AMENDMENT

This Agreement may not be amended unless agreed to in writing by each of the parties hereto. The Service Provider will not accept or be bound by any purported amendment to this Agreement which is not in writing and executed by a duly authorized representative of the Service Provider.

## SECTION 16. ENTIRE AGREEMENT

This Agreement (including all exhibits and addenda hereto) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, proposals, brochures, representations, or understandings of any kind, whether oral or written, related to the matters set forth herein.

## SECTION 17. WAIVER

No term or provision of this Agreement shall be deemed to have been waived and no breach of this Agreement will be deemed to be excused unless the party which is claimed to have waived the term or

8

provision or have excused the breach shall have done so in a written instrument duly signed by an authorized representative of such party.

## SECTION 18. LIMITATIONS ON LIABILITY

The Service Provider is entitled to rely upon the most recent information provided to it, or any instructions given to it, by any representative, officer, employee or agent of the Employer or the Plan Administrator, or by any Participant or Participant's beneficiary. The Service Provider shall not be liable for, and shall be entitled to indemnification under this Agreement for, any Losses arising from any act or omission hereunder that is taken or not taken in reliance upon incorrect, incomplete or untimely information supplied to it.

The Service Provider may rely exclusively upon the information received from any Primary Contact person designated in Section 19 hereof.

## SECTION 19. NOTICES

All notices, requests and other communications to any party for any purpose hereunder shall be in writing (including facsimile transmission with transmission confirmed) and shall be given to the following address(es):

if to the Employer, to:

> STANDARD AUTOMOTIVE CORP.
> 401 Route 206 North
> Somerville, N.J. 08876 - 5527
>
> Primary Contact(s): _____
> Roy Ceccato

if to the Plan Administrator, to:

> STANDARD AUTOMOTIVE CORP.
> 401 Route 206 North
> Somerville, N.J. 08876 - 5527
>
> Primary Contact(s): _____
> Anita Daw - Pierce

if to the Service Provider, to:

Copeland Associates, Inc.
  Smith Barney Plan Services
Attention: General Counsel
Two Tower Center
PO Box 1063
East Brunswick, NJ 08816-1063

with a copy to
  Smith Barney Inc.:

Salomon Smith Barney
  Corporate Retirement Services
Attention: Director of Corporate Retirement Services
388 Greenwich Street
New York, NY 10013

or at such other address as each such party may designate by written notice to the other parties hereto. All such notices, requests and other communications shall be deemed received on the date of receipt by the recipient thereof.

9

The Service Provider will not accept legal process on behalf of the Plan, the Employer or the Plan Administrator under any circumstances.

## SECTION 20. INDEPENDENT CONTRACTOR

The Service Provider is, and shall continue to be during the term of this Agreement, an independent contractor with respect to the services provided to the Employer and the Plan Administrator. Neither this Agreement nor the Service Provider's performance hereunder shall make the Service Provider an agent or a fiduciary of the Employer, the Plan Administrator, the Plan or any Participant.

## SECTION 21. PRE-EXISTING PLANS

**21.1 Representations.** For the Employer's Pre-Existing Plan, the Employer represents and warrants the following:

- The Pre-Existing Plan is qualified under Code Section 401(a) and the Plan trust is exempt under Code Section 501(a) and has been timely amended for all regulatory and legislative changes.

- The Service Provider has been provided with true and complete copies of the Pre-Existing Plan document, all amendments thereto and all instructions that may be required by the Service Provider to perform its services under this Agreement.

- The Pre-Existing Plan has been operated in compliance with requirements of ERISA and the Code including, but not limited to, if applicable, the ADP/ACP test, the Code Section 415 limits and the minimum participation and coverage requirements for all prior years.

- The Employer has filed the appropriate Form 5500 for all prior plan years.

- The Employer has furnished accurate information on the Form 5500 annual plan activity report summarizing the reconciling account balances with Plan assets, schedule of Pre-Existing Plan loans, and such other documents as the Service Provider may have requested.

- The Employer has applied for or received an IRS determination letter with respect to the Plan.

- The Employer has met, and will continue to meet, its fiduciary obligations and has operated, and will continue to operate, the Plan, and has made, and will continue to make, investments solely in the interests of the Participants and beneficiaries.

**21.2 No Liability.** For Pre-Existing Plans, no Service Provider Party (as defined in Section 12.2) is responsible for any Losses resulting from the services provided by other recordkeeper and service provider (including prior recordkeepers and service providers) or which are incurred as a result of actions or decisions which were undertaken or made by any such recordkeeper or service provider to the Employer or the Plan. The Service Provider shall not (and shall have no obligation to) review prior administrative service work, or tax or other filings made, by such other recordkeeper and service provider or prior to the date of this Agreement.

## SECTION 22. ADDITIONAL FINANCIAL SERVICES

The Employer acknowledges and agrees that the Service Provider and its Affiliates may use any information provided to the Service Provider by Participants and the Employer hereunder (e.g., age, salary, projected retirement age) to contact Participants regarding financial products and services (outside of the program) that could assist such Participants in achieving their financial goals. The Employer understands that while Participants will have no obligation to use these services, if they choose to take advantage of them, additional fees may apply.



## SECTION 23. SERVICES NOT COVERED

Neither the Service Provider nor any of its Affiliates will have any responsibility for the following services in connection with the Plan:

- monitoring compliance with ERISA by the Plan Administrator or any other Plan fiduciary or party in interest;

- obtaining a determination letter, the Service Provider may, for an additional agreed upon fee draft and file IRS form 5300 or 5307 to obtain a determination letter;

- monitoring Code compliance with respect to the Plan's tax qualified status under Code Section 401(a)

- except for testing to be undertaken under the express terms of this Agreement, the Service Provider shall not provide additional testing services unless specifically agreed to in writing for an additional fee;

- monitoring Participants' contribution limits if more than one plan is maintained by the Employer, the Service Provider may, for an additional fee may annually calculate the Participants' contribution limits; and

- any other service not specifically covered by this Agreement.

## SECTION 24. ARBITRATION

- **Arbitration is final and binding on the parties.**

- **The parties are waiving their right to seek remedies in court, including the right to trial by jury.**

- **Pre-arbitration discovery is generally more limited than and different from civil proceedings.**

- **The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or seek modification of rulings by the arbitrators is strictly limited.**

- **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

The Employer agrees that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between the Employer or the Plan and the Service Provider and/or any of the Service Provider's present or former officers, directors, or employees concerning or arising from (i) any account or assets maintained by the Employer or the Plan with, or services provided to the Employer or the Plan by, the Service Provider (or its Affiliates or agents) or any predecessor or successor firms by merger, acquisition or other business combination; (ii) any transaction involving the Service Provider (or its Affiliates or agents) or any predecessor or successor firms by merger, acquisition or other business combination and the Employer or the Plan; or (iii) the construction, performance or breach of this or any other agreement between the Employer and the Service Provider (or its Affiliates or agents) or any predecessor or successor firms by merger, acquisition or other business combination, or any duty arising from the business of the Service Provider (or its Affiliates or agents) or any predecessor or successor firms by merger, acquisition or other business combination or otherwise, shall be determined by arbitration before, and only before, the American Arbitration Association ("AAA"). .

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action;

11

or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

## SECTION 25. COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## SECTION 26. SEVERABILITY

If any provision of this Agreement (including all exhibits and addenda hereto) shall be held or made invalid by a statute, rule, regulation, decision of a tribunal or otherwise, the remainder of this Agreement shall not be affected thereby and, to this extent, the provisions of this Agreement shall be deemed to be severable. All Section headings in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.

NOTE: This Agreement contains a pre-dispute arbitration clause which is in Section 24.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed.

Witness:

COPELAND ASSOCIATES, INC.,
  doing business as
SMITH BARNEY PLAN SERVICES

By:
  Name:
  Title:

Witness:

[PLAN ADMINISTRATOR]

By:
  Name: Anita Daw-Pierce
  Title: HR/Payroll Mgr.

Witness:

[EMPLOYER]

By:
  Name: Roy Coccoto
  Title: Treasurer

12

**Addendum Modifying the Recordkeeping Services**

Notwithstanding Section 5.1.3(iii), the Employer and Plan Administrator hereby delegate and appoint Plan Services as its designated agent to draft the annual Form 5500 for the Plan which will be reviewed, signed and filed by the Employer and Plan Administrator. Plan Services is also appointed as the designated agent to prepare and mail to Participants tax Form 1099-R. Plan Services shall calculate minimum distribution amounts required under Section 401(a)(9) of the Code. Plan Services is authorized to withhold taxes on distributions and to transmit such amounts withheld to the appropriate State or Federal taxing authority on behalf of the Plan.

Notwithstanding Section 5.1.4, Plan Services shall perform Top-heavy Testing but only for determination dates occurring after Plan Services became the recordkeeper and had received all prior assets and records, so long as this is the only Plan ever maintained by the Employer. Plan Services shall not aggregate this Plan with any other Plan for any testing purpose.

Witness:                                           **[PLAN ADMINISTRATOR]**

By: _____
Name: _Anita Dawl-Pierce_
Title: _HR/Payroll Mgr._

Witness:                                           **[EMPLOYER]**

By: _____
Name: _Roy Cocca to_
Title: _Treasurer_

If for any reason a Plan Administrator is not designated with respect to this Plan, the Employer shall be deemed to execute this Agreement in its capacity as both sponsor and as the Plan Administrator.

13

## INTERNET SERVICES ADDENDUM
## TO THE RECORDKEEPING SERVICES AGREEMENT

A)     The Service Provider will make available to the Employer Internet services ("Internet Services") that will permit each Participant to: 1) access information about his/her Plan account through the Service Provider's Web-site ("Site"), 2) communicate electronically with the Service Provider from the e-mail facility on the Site ("E-Mail"), 3) view on-line the investment alternatives available to him/her under the Plan, and 4) change funding allocations, elections and transfer balances between funding alternatives. A Participant shall include a Beneficiary, Alternate Payee, and any Employee of an Employer. This Internet Services Addendum ("Addendum") is attached to and made a part of the Agreement among the Service Provider, the Employer and the Plan Administrator. Except as otherwise provided in this Addendum, all terms and conditions in the Agreement will apply to the Internet Services, and all defined terms used in such Agreement shall have the same meaning in this Addendum. The fees payable to the Service Provider for the Internet Services are set forth in the Schedule of Fees.

B)     The Employer acknowledges and agrees that the Service Provider may impose reasonable restrictions and/or conditions on the use of the Internet Services, including without limitation restrictions on the types of communication that Participants may conduct with the Service Provider through E-Mail.

C)     As to its proprietary computer code, the Service Provider shall not be liable for any harm caused by the transmission of an unknown computer virus, computer code or programming device that might be used to access, modify, delete, damage, disable, disrupt or impede the operation of the Internet Services or the Employer's hardware or software. In the event the Service Provider licenses and makes available to the Employer through the Internet Services certain software or applications of third parties, the Service Provider agrees to use its commercially reasonable best efforts to determine whether such third party software or applications are free of any virus, computer code or programming device that may cause such harm to its installation on the Site.

D)     The Employer and Plan Administrator acknowledge that the Internet Services are the property of the Service Provider or other persons or entities that allow the Service Provider to distribute their information or data ("Information Providers") and are protected by applicable copyright, patent, trademark or other intellectual property laws. Except as expressly authorized in the Agreement, the Employer and Plan Administrator may not, and will cause Participants not to: (i) reproduce, transmit, sell, display, distribute,

14



publish, broadcast, circulate, modify, disseminate, or commercially exploit the Internet Services without the written consent of the Service Provider, or (ii) use the Internet Services for any unlawful purpose or any purpose not permitted by the Agreement.

E)    In the event the Internet Services are used to gain access to a World Wide Web-site or Internet location or source of information of any company, organization or person other than the Service Provider, the Employer and Plan Administrator acknowledge and agree on behalf of themselves and all Participants, that such other sites or locations are not under the control of the Service Provider, and the Service Provider shall not be responsible for any information or other links found at any such World Wide Web site or Internet location or source of information, or for the use of such information by the Participants.    The Service Provider provides such links only as a convenience to Participants and has not tested any software or verified any information found at such sites, including the content of any prospectus or sales literature contained on such sites.    The Employer and Plan Administrator acknowledge, on behalf of themselves and all Participants, that the Service Provider's provision of a link to another site does not signify an endorsement of the site or its contents by the Service Provider.

F)    The Employer and Plan Administrator acknowledge and agree on behalf of themselves and the Participants that transmission by it or any Participant of any material in violation of the Agreement, or any applicable law, rule or regulation (whether of the United States or other countries), or the rights of any third party, is prohibited.    This includes, but is not limited to, material which (i) is defamatory, threatening or obscene, (ii) is protected by copyright, trademark, trade secret, patent law or other intellectual property laws, or (iii) results in an invasion of privacy.

G)    **The Service Provider expressly disclaims all express and implied warranties with respect to the Internet Services, including without limitation warranties of merchantability, fitness for a particular purpose, or error-free and uninterrupted Internet Services.**

H)    Nothing herein shall prohibit or restrict development by the Service Provider of new technology or features relating to the Internet Services it offers to all or a portion of its qualified retirement plan clients, or require the Service Provider to make any such new technology or features available to the Employer or Plan Administrator.

I)    In addition to the provisions of Section 12.2 of the Agreement, the Employer and Plan Administrator agree to indemnify, defend, exonerate and hold harmless the Service Provider from and against any Losses (including actual fees of accountants, attorneys and the employees of each of them) resulting or arising from the negligent, bad faith or fraudulent act of the Employer, Plan Administrator or a Participant that relates to the Internet Services, or any use of the Internet Services by Participants that is not permitted by the Agreement (including this Amendment).

\*   \*   \*

By signing below the parties acknowledge their acceptance of, and agreement with, this Internet Services Addendum, which is dated as of _____.

Witness:                                    COPELAND ASSOCIATES, INC.,
                                            doing business as
                                            SMITH BARNEY PLAN SERVICES

_____                 By_____
                                            Name:
                                            Title:

Witness:                                    [PLAN ADMINISTRATOR]

                                            By:_____
                                            Name: Anita Vaul-Pierce
                                            Title: HR/Payroll Mgr.

Witness:                                    [EMPLOYER]

                                            By:_____
                                            Name: Roy Ceccate
                                            Title: Treasurer

16