# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                            )
MARY DESMOND, THOMAS ZIOBROWSKI,            )
PAUL WATTS on their own behalf and on       )
behalf of other participants in the defendant ERISA )
Plans,                                      )
                                            )
    **Plaintiffs,**                              )
                                            )
    v.                                        ) Civil Action No.:  05-10355-NG
                                            )
MORTON C. BATT, ANTHONY L. SCIALABBA,)
CITISTREET, LLC, WHITE & WILLIAMS, LLP, )
SCIALABBA & MORRISON, P.C., ANTHONY         )
L. SCIALABBA & ASSOCIATES, P.C., THE        )
STANDARD AUTOMOTIVE 401(K) PLAN,            )
THE STANDARD AUTOMOTIVE EMPLOYER            )
CONTRIBUTION PLAN,                          )
                                            )
    **Defendants.**                              )
_____)

**SUPPLEMENTAL MEMORANDUM OF LAW OF ANTHONY L. SCIALABBA
AND ANTHONY L. SCIALABBA & ASSOCIATES, P.C. IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

## I.    <u>Introduction</u>

Plaintiffs continue to struggle, unsuccessfully, with the requirements for a preliminary injunction. Defendants Anthony L. Scialabba ("Scialabba") and Anthony L. Scialabba & Associates, P.C ("Scialabba Firm") (collectively, "Scialabba Defendants") submit this supplemental memorandum in response to plaintiffs' arguments asserted in their April 11, 2005 reply.[1] Plaintiff still have not demonstrated that this Court has personal jurisdiction over either of the Scialabba Defendants or that this Court is the

---

[1] Of the three prayers for injunctive relief, only the second, requiring "segregation" of funds already paid by the Plans to defendants, applies to the Scialabba Defendants. The two other prayers for relief apply only to current trustee and plan administrator defendant Morton C. Batt ("Batt").

appropriate venue for this action (the Scialabba Defendants respectfully suggest that transfer to New Jersey is appropriate). Plaintiffs also continue to fail to carry their burden of demonstrating a likelihood of success on the merits, and do not and cannot overcome the fact that any alleged harm can be redressed with money damages and thus is not irreparable.

The underlying facts in opposition to plaintiffs' request for injunctive relief are now substantiated by affidavit in the accompanying Affidavit of Anthony L. Scialabba ("Scialabba Aff.") and are summarized as follows:

- The Scialabba Firm was retained to resolve certain significant administrative issues with respect to record-keeping and third-party administration services for the Plans provided by defendant Citistreet, LLC ("Citistreet"), as described further in the affidavit. (Scialabba Aff. at 2 and 3).

- The Scialabba Firm was retained not only to resolve such errors for the purpose of determining accurate account balances on both a trust and participant level but also, due to these errors, to guide the Plans through several different government sponsored voluntary correction programs that relate to "tax-qualified" retirement plans. Such programs are necessary in order to ensure the acceptability to the government of any and all corrective acts taken in relation to the Plans and to maintain for the participants of the Plans the tax benefits associated with such a retirement plan. The efforts of Scialabba and the Scialabba Firm to correct these significant problems were necessary and reasonable, given the nature and extent of these problems. (Scialabba Aff. at 4).

- All third-party services or acts by the Scialabba Firm and Citistreet took place in New Jersey. None took place in Massachusetts. (Scialabba Aff. at 5).

- The employer and plan sponsor appointed Scialabba as trustee and plan administrator, a position he held from December 2002 until December 2003, when current and successor trustee and plan administrator Batt replaced him. (Scialabba Aff. at 6). All actions as trustee and plan administrator by Scialabba, and by Batt during times pertinent to this action, took place in New Jersey. None took place in Massachusetts. (Scialabba Aff. at 6-7).

Plaintiffs' request for injunctive relief should be denied.[2]

## II. Argument

### A. TO THE EXTENT THIS COURT SIDES WITH THE MINORITY (BUT BETTER REASONED) VIEW THAT MINIMUM CONTACTS WITH THE FORUM IS REQUIRED FOR THE EXERCISE OF PERSONAL JURISDICTION IN ERISA CASES, INJUNCTIVE RELIEF AS TO THE SCIALABBA DEFENDANTS IS IMPROPER FOR WANT OF PERSONAL JURISDICTION.

As set forth by defendant White and Williams LLP in its supplemental memorandum of law in response to plaintiffs' motion for preliminary injunction (Section I.A, pages 2-5, are incorporated herein by reference), while the First Circuit appears to side with the majority view regarding personal jurisdiction in ERISA cases, requiring merely service in the United States as opposed to minimum contacts with Massachusetts, this approached has been questioned within this District. See Cole v. Central States Health & Welfare Fund, 225 F.Supp.2d 96 (D. Mass. 2002). The better approach, based on Fifth Amendment Due Process principles, is that espoused in Peay v. BellSouth Med. Assistant Plan, 205 F.3d 1206 (10th Cir. 2000), requiring adequate contact with the jurisdiction in which suit is brought.

---

[2] Plaintiffs in their reply request expedited discovery. In addition to the fact that this "request" is not properly in the form of a motion, plaintiffs previously courteously stipulated to extend the time for the Scialabba Defendants to answer or otherwise respond to the complaint until April 26, 2005. To the extent the Court does not dismiss or transfer this matter in connection with plaintiffs' preliminary injunction motion, the Scialabba Defendants anticipate filing a motion to dismiss for lack of personal jurisdiction and/or improper venue, or to transfer pursuant to 28 U.S.C. s. 1404(a). Plaintiffs' request for expedited discovery should await the Court's disposition of any such motion.

3

Here, as detailed in the Scialabba Aff., neither Scialabba nor the Scialabba Firm had the requisite contact with, or for that matter any presence in, Massachusetts. Both have offices only in New Jersey, performed all duties or services with respect to the Plans exclusively in New Jersey, and never visited Massachusetts in connection with those duties or services. (Scialabba Aff. at 1, 5, 7). Taking into account jurisdiction considerations set forth in the White and Williams LLP memorandum, this Court should refuse to exercise personal jurisdiction over the Scialabba Defendants and should deny plaintiffs' request for an injunction.

**B.     VENUE IS NOT PROPER IN MASSACHUSETTS.**

In order for venue to be proper in this Court, the plaintiffs must demonstrate that this is "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. s. 1132(e)(2). Contrary to plaintiffs' unsubstantiated contentions, plan administration did not take place in Massachusetts. The "administrative tasks" to which plaintiffs refer on page 5 of their reply,[3] consist largely if not completely of the acts of employees in completing forms, and certainly do not rise to the level of plan administration. "In determining where the plan is administered, courts have adopted the general definition of the word 'administer' and have concluded from the legislative history of 29 U.S.C. s. 1132(e)(2) that the plain meaning of 'administer' means 'to manage.'" Wallace v. American Petrofina, Inc., 659 F. Supp. 829, 831 (E.D. Tex. 1987); Sprinzen v. Supreme Court of the State of N.J., 478 F. Supp. 722 (S.D.N.Y. 1979). All true plan administration, therefore, took place in New Jersey. (Scialabba Aff. at 3, 4, 5, and 7).

---

[3] Plaintiffs provide no competent evidence supporting these assertions, and they should be stricken.

4

Nor is Massachusetts where any breach took place. In support of their argument that an alleged breach took place in Massachusetts because this is where plaintiffs failed to receive the desired relief, "roll over" of their 401(k) benefits, plaintiffs rely upon Cole v. Central States, 227 F. Supp. 2d 190 (D. Mass. 2001). In Cole, however, this Court distinguishes between benefits claims, in which the breach does indeed take place in the district where the benefits were to be received, and breach of fiduciary duty claims, in which the breach occurs "where the fiduciary acted in contravention to their duty or failed to act as their duty required." Cole, 227 F. Supp. 2d at 195 and n. 6. See also McFarland v. Yegen, 699 F. Supp. 10, 13 (D. N.H. 1988) (alleged breach of ERISA fiduciary duties occurs only where the fiduciary acts). While plaintiffs include a claim (Count III) for wrongful denial of benefits,[4] the essence of their claims is not a denial of benefits at all, which is a contract-like claim based on plan terms, but rather an alleged breach of fiduciary duty arising from plan administration for failure to "roll over" their retirement funds to their new employer. (Complaint at 21-22).

Lastly, plaintiffs' superficial argument that one of the defendants, Citistreet, can be found here, thus making this venue proper, completely ignores ERISA venue jurisprudence. In order for a defendant to "be found" in a district for purposes of ERISA's venue provision, the "minimum contacts" test for personal jurisdiction, as set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny, must be met. See Cole, 227 F.Supp.2d at 198-199 (citing McFarland, 699 F. Supp. at 14). Since plaintiffs fail to allege any conduct by Citistreet from its Massachusetts office (indeed, as set forth in the Scialabba Aff. at 5, it

---

[4] Count III is asserted only as to Batt, the Plans, Citistreet, and Scialabba. The Scialabba Firm is not named therein.

5

all occurred from Citistreet's New Jersey office), Citistreet is not "found" in Massachusetts for ERISA venue purposes. While Plaintiffs allege only that Citistreet has an office in Massachusetts, merely "doing business" in a jurisdiction does not mean that that entity "may be found" in that district for purposes of ERISA venue analysis. <u>Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan</u>, 481 F. Supp. 454, 458 (N.D. Ga. 1979). Since venue is improper in this Court, no injunction should issue.[5]

### C. ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW JERSEY.

Even if the Court nonetheless were to find venue in this Court proper, transfer to New Jersey pursuant to 28 U.S.C. s. 1404(a) is warranted, for the convenience of parties and witnesses, and in the interests of justice. See <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000). See also <u>McFarland</u>, 699 F. Supp. at 15 (transferring ERISA case to New Jersey, where the defendants could be found, where the documents were located, where the plan was managed, and where any alleged breaches occurred). While plaintiffs' choice of forum ordinarily is entitled to some deference, this is not like a benefits denial case, where a court's determination is based on a cold administrative record, and where the plaintiffs' choice of forum should be given considerable weight. Here, that choice should be given substantially less weight, where, as set forth in the Scialabba Affidavit, the operative facts all took place in New Jersey. See <u>McFarland</u>, 699 F. Supp. at 15-16 (quoting <u>Sheet Metal Workers' National Pension Fund v. Gallagher</u>, 669 F. Supp. 88, 91 (S.D.N.Y. 1987)). While New Jersey is no doubt less convenient for the plaintiffs, what is at issue here concerns plan administration, and it is incontrovertible that all plan administration took place in in New Jersey. Plaintiffs will

---

[5] If this Court finds that venue in this Court is improper, either this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. s. 1406(a), or transferred pursuant to s. 1406(a). If the Court chooses the latter, New Jersey would be the most appropriate forum, as set forth in the following section.

6

have little if any "live" testimony to offer during the discovery process. Conversely, all documents and the overwhelming majority if not all of the most important deponents are found in New Jersey. See Central States, Southeast and Southwest Areas Pension Fund v. Brown, 587 F. Supp. 1067, 1070 (N.D. Ill. 1984) ("In considering the convenience of potential witnesses [in the context of s. 1404(a) analysis], the Court must consider not only the number of witnesses located in the respective district, but also the nature and quality of their testimony in relationship to the issues in the case."). Thus, this action should proceed in New Jersey, if at all, and under these circumstances it would be inappropriate for this Court to grant injunctive relief in an action that should not proceed here.

### D. PLAINTIFFS HAVE NOT DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

Despite a second chance to aver facts sufficient to support injunctive relief, plaintiffs still fall short. The sole basis for plaintiffs' argument with respect to their likelihood of success continues to be the opinion of Attorney W. Terrence Jones. In his affidavit, Attorney Jones opines that plan termination should have taken anywhere from six to fifteen months, and that since November 2002 reasonable fees should not have exceeded $50,000. Plaintiffs, however, despite now having ample opportunity to do so, do not even attempt to rebut the Scialabba Defendants' explanation (now supported by affidavit) of this unfortunate circumstance and why plan termination has taken so long and been so costly.

As set forth in the Scialabba Affidavit, the problems the Scialabba Firm were retained to address were significant, and included the following: (1) misallocations to certain Participants' accounts under the Plans; (2) incorrect postings of Participant

7

contributions; (3) inaccurate recordkeeping for loan repayments with regard to certain Participants; (4) the inability to accurately reconcile the individual accounts of the Participants; and (5) substantial discrepancies between the stated value of the trusts of the Plans and the actual asset value of the trusts of the Plans. (Scialabba Aff. at 3).

The Scialabba Firm was retained not only to resolve such errors for the purpose of determining accurate account balances on both a trust and participant level but also, due to these errors, to guide the Plans through several different government sponsored voluntary correction programs that relate to "tax-qualified" retirement plans. Such programs are necessary in order to ensure the acceptability to the government of any and all corrective acts taken in relation to the Plans and to maintain for the participants of the Plans the tax benefits associated with such a retirement plan. The Scialabba Defendants' efforts to correct these significant problems were necessary and reasonable, given the nature and extent of these problems. (Scialabba Aff. at 4).

Attorney Jones nowhere suggests that he is the least bit aware of these complicating factors or the scope of services provided, or that he has taken either into account in opining as he has. Reasonableness of compensation requires a case-by-case analysis. See NARDA, Inc. v. Rhode Island Hosp. Trust Nat. Bank, 744 F. Supp. 685, 699 (D. Md. 1990) (whether services provided were necessary and appropriate and compensation received was reasonable are inherently questions of fact). Attorney Jones's conclusory and largely uninformed opinion is an insufficient factual predicate for the injunctive relief plaintiffs seek.

## E.   PLAINTIFFS STILL DO NOT SATISFY THE IRREPARABLE HARM REQUIREMENT.

Plaintiffs' second attempt to satisfy this requirement is, like their first, unavailing. They still have not demonstrated why money damages would not make them whole or, in other words, how any alleged harm is irreparable. Moreover, while plaintiffs cite an excerpt from ERISA authorizing injunctive relief generally, they do not cite a single case supporting the relief they seek here against the Scialabba Defendants. Scialabba is no longer plan administrator or otherwise a fiduciary with respect to the Plans (the Scialabba Firm was never a plan fiduciary), so Prayers One and Three of the desired injunction do not pertain to him. Not a single one of the cases plaintiffs cite in support of their irreparable harm argument supports injunctive relief against a former plan fiduciary (Scialabba) for breach of fiduciary duty or wrongful denial of benefits, or against a non-fiduciary (Scialabba Firm) for alleged violations of ERISA. Indeed, the cases plaintiffs cite are inapposite. As explained in greater detail in the margin, two of the four cases plaintiffs cite involve injunctive relief against an employer for obligations arising out of a collective bargaining agreement,[6] the third involves a hospital's obligations with respect

---

[6] In Zorn v. K.C. Community Construction Co., 812 F. Supp. 948 (W.D. Mo. 1992), a consolidated action, retirement plans and their trustees brought action against the employer for failing to pay certain contributions to the plans pursuant to a collective bargaining agreement, and a union brought action against the employer to enforce an arbitration award requiring the employer to pay its delinquencies and to stay current in the future. The retirement plans and their trustees sought injunctive relief requiring the employer to make certain contributions, and the union sought injunctive relief requiring the employer to comply with the arbitration award. In granting the injunctive relief, the court relied on precedent "for the general proposition that an employee benefit plan is entitled to preliminary and permanent injunctive relief against an employer which has demonstrated a propensity to be delinquent in its contributions to the plans." Zorn, 812 F. Supp. at 952. Lewart v. Woodhull Care Center Associates, 549 F. Supp. 879 (S.D. N.Y. 1982) is another action against an employer for payments alleged to be owed under a collective bargaining agreement. Plaintiffs cite Lewart for the proposition that Congress, by 29 U.S.C. s. 1132(g)(2)(E) authorizes injunctive relief requiring employers to make contributions. Lewart, 549 F. Supp. at 886. This proposition quite obviously has no bearing whatsoever on this matter. Moreover, in Lewart, the court refused to grant the injunctive relief, suggesting that monetary damages recoverable gives plaintiffs a fully adequate legal remedy.

to its self-insured health plan,[7] and the fourth involves injunctive relief on their claim for benefits, expressly distinguishing claims for breach of fiduciary duty.[8] Thus, not only do plaintiffs continue to fail to demonstrate that money damages would not make then whole, they fail to cite a single case in which a court has granted the sort of injunctive relief they seek here.

### G. PLAINTIFFS MISAPPREHEND OR MISSTATE THE STANDING ARGUMENT.

In their initial opposition to plaintiffs' preliminary injunction motion and at oral argument, the Scialabba Defendants demonstrated that the injunctive relief plaintiffs seek is overly broad. Plaintiffs are challenging *all* fees paid by the Plans, yet by their own admission represent only approximately 57 plan participants, who are seeking to "roll over" account balances to their new common employer, (Affidavit of Mary Desmond, at 5), whereas there is a total of approximately 211 participants in the Plans. Nonetheless, the relief plaintiffs seeks is a segregation and holding of *all* of the fees or retainers paid to the Defendants. The point is not, as plaintiffs suggest at p. 6 of their Reply, that only 27% (57/211) of the Plans' funds should be subject to any injunction, but that 27% of the fees or retainers paid to the defendants should be considered for segregation.[9] While plaintiffs maintain that they seek relief on behalf of all participants, they cite no factual or

---

[7] In Schwartz v. Interfaith Medical Center, 715 F. Supp. 1190 (E.D.N.Y. 1989), the collective bargaining representative brought suit against a hospital seeking to compel compliance in administering its self-insured health insurance plan.

[8] In Foltz v. U.S. News & World Report, 613 F. Supp. 634 (D.C. 1985), the plaintiffs were granted injunctive relief on their claim for benefits (as opposed to their breach of fiduciary duty claims) based on the court's conclusion that absent such relief the plaintiffs would lose their benefits cause of action as to the plan. The court also concluded that "creditworthiness of the non-Plan defendants should not be a relevant factor in this analysis." Foltz, 613 F. Supp. at 643. While the Scialabba Defendants do not believe it material to whether the plaintiffs have satisfied the irreparable harm requirement, the Scialabba Firm's malpractice coverage might be available to defray any relief granted against it.

[9] The actual percentage should be even lower, as even Attorney Jones has conceded that a certain amount of the fees received were reasonable

10

legal basis for their contention. The Scialabba Defendants have demonstrated that injunctive relief of any kind is inappropriate here, and more specifically that there is no basis for that portion of the relief sought requiring segregation of funds received by the defendants. To the extent the Court is nonetheless inclined to grant such relief, it should be limited to no more than 27% of the funds received by the defendants.

### III.    Conclusion

For the reasons set forth above, the Scialabba Defendants respectfully request that the Court deny plaintiffs' motion for preliminary injunction and/or transfer this action to the District of New Jersey. Alternatively, in the event that the Court grants the injunctive relief, the Scialabba Defendants respectfully request the giving of security by the

[Intentionally left blank]

plaintiffs, which is required by Fed. R. Civ. P. 65(c). And to the extent the Court thinks plaintiffs' request for expedited discovery is properly before it, the Court should deny that request.

ANTHONY L. SCIALABBA,
and ANTHONY L. SCIALABBA &
ASSOCIATES, P.C.

By their attorneys,

/s/Anthony L. Scialabba
Anthony L. Scialabba, Esq.
Geoffrey M. Strunk, Esq.
SCIALABBA & ASSOCIATES, P.C.
1002 Lincoln Drive West, Suite B
Marlton, NJ  08053
(856) 396-0499

(Admitted Pro Hac Vice)

-and-

/s/Ronald M. Jacobs
Ronald M. Jacobs (BBO# 561535)
CONN KAVANAUGH ROSENTHAL
    PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200

Dated:  April 20, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document and the accompanying Affidavit of Anthony L. Scialabba were served on those parties whose counsel have registered with the Court's ECF service by employing such service for filing these documents and upon pro so defendant Morton C. Batt on April 20, 2005 by mailing a copy to Morton C. Batt, 2424 NW 63rd Street, Boca Raton, FL  33496-3626

/s/Ronald M. Jacobs

224642.2