UNITED STATES OF AMERICA
BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE STANDARD AUTOMOTIVE CORP. RETIREE BENEFITS "ERISA" LITIGATION | ) ) ) MDL Docket No. 1753 ) ) |

**RESPONSE TO MOTION TO TRANSFER AND CONSOLIDATE
BY PLAINTIFFS IN THE MASSACHUSETTS ACTION**

Plaintiffs Mary Desmond, Thomas Ziobrowski and Paul Watts on their own behalf and on behalf of other participants in the defendant Standard Automotive Corp. ERISA plans (hereinafter the "Participant Plaintiffs") hereby oppose the motion of defendants Anthony L. Scialabba, Anthony L. Scialabba and Associates, P.C., and Morton Batt to transfer and consolidate pending New Jersey and Massachusetts actions pursuant to 28 U.S.C. § 1407. If the Panel were to transfer and consolidate the pending actions, the Participant Plaintiffs respectfully request that the actions be consolidated in the District of Massachusetts because:

(1) The Massachusetts action was filed in February 2005, some six months prior to the New Jersey action;

(2) The Court in the Massachusetts action has already conducted substantive proceedings in the matter including issuance of a preliminary injunction with respect to the defendant ERISA plans; and

(3)  In an ERISA action, the Participant Plaintiffs' choice of choice of forum should be given considerable weight. <u>Vartanian v. Monsanto Co.</u>, 880 F.Supp. 63, 73 (D. Mass. 1995)("The moving party bears the heavy burden of establishing that the transfer to another district is proper and must overcome the considerable weight the court give to a plaintiff's choice of forum. This is especially true with respect to ERISA actions, because Congress' intent in drafting ERISA's liberal venue provision was to expand an ERISA plaintiff's choice of forum and limit the forum choice of corporate fiduciaries.")

**Factual Background**

1.  The named Participant Plaintiffs are employed at a facility located in Westminster, Massachusetts that specializes in the fabrication and machining of large metal constructs for industry, defense and aerospace applications. Over the past several years, the facility has had between 100 and 150 employees. Three corporate entities have owned the facility. Prior to 1998, the facility was owned by Ranor, Incorporated ("Old Ranor"). Old Ranor maintained a 401(k) savings plan for its employees. <u>Affidavit of Mary Desmond dated February 22, 2005</u> (hereinafter "Desmond Aff."), ¶ 2 (copy attached as Exhibit 1)

2.  On or about June, 1999, the facility was sold to Standard Automotive Corporation. Most employees of Old Ranor "rolled over" their Old Ranor 401(k) account balances into Standard Automotive Corporation's 401(k) Savings Plan (the "Plan"). *Desmond Aff.*, ¶ 3.

3.  On or about March, 2002, Standard Automotive Corporation filed for bankruptcy protection. Then, on August 7, 2002, the facility was sold with bankruptcy court approval to

Ranor, Inc. ("New Ranor"). As of August 7, 2002, the employees at the facility ceased being employees of Standard Automotive Corporation and became employees of New Ranor. *Desmond Aff.*, ¶ 4.

4. New Ranor set up a 401(k) savings plan for employees and on about November 18, 2002, Plan participants sent the Plan administrator properly executed distribution forms for about fifty-seven (57) Plan participants requesting that their saving account balances be "rolled over" into the New Ranor 401(k) Plan. Despite numerous communications, Plan participants have been unable to roll over their 401(k) account balances until this date. *Desmond Aff.*, ¶ 5.

5. In or about January 2003, defendant Anthony L. Scialabba announced to the Plan participants that he was the new Plan administrator and trustee and would expeditiously move to terminate the Plan and make distributions. *Desmond Aff.*, ¶ 6-8.

6. Plan participants became concerned with the long delay and formed a committee to request information from Defendant Scialabba. Defendant Scialabba did not adequately respond to their requests for information, delay continued and substantial amounts began to be deducted from Participants retirement savings accounts. *Desmond Aff.*, ¶¶ 9-11.

7. On or about February 27, 2004, Plan participants received a memorandum from Morton C. Batt indicating that he had been appointed to act as trustee and plan administrator of the Plan as of December 9, 2003. Plan participants are unaware of who Mr. Batt is, or what his qualifications are to act as a plan administrator. *Desmond Aff.*, ¶¶ 12-15 and Exhibits 9-13.

8. Quarterly statements issued to Plan participants since January 1, 2003 illustrate that the following percentages of their 401(k) Plan accounts have been deducted for administrative fees in each of the following quarters:

| Quarter ending | Percentage of 401(k) account taken as fees |
|---|---|
| 3/31/2003 | 9.73% |
| 6/30/2003 | 3.26% |
| 9/30/2003 | .21% |
| 12/31/2003 | 3.75% |
| 3/31/2004 | 3.25% |
| 6/30/2004 | 3.61% |
| 9/30/2004 | 3.09% |
| 12/31/2004 | 7.03% |
| Total | 33.93% |

*Desmond Aff.* ¶ 16.

9.      Based on information received from CitiStreet in January 2003, the Plan had a balance of approximately $2,300,000 at that time. Thus, it appears that over $700,000 have been withdrawn from the Plan for administrative fees in just two years without any benefit having been conferred on Plan participants. On January 21, 2004, participants sent an e-mail to Morton Batt requesting an explanation of fees and expenses. Mr. Batt did not respond to all of the participants questions but he did indicate that the following amounts were paid from the Plan **during 2004 alone**: $256,933.21 to Anthony L. Scialabba and Associates (the firm of the former trustee); $75,000 to White & Williams; $23,286.70 to Morton Batt. *Desmond Aff.*, ¶¶ 17-18

10.     Termination of the Plan and distribution of all assets should have taken approximately six (6) months. Affidavit of W. Terrence Jones, Esq. dated February 22, 2005, (hereinafter "Jones Aff."), ¶ 9. (copy attached as Exhibit 2)

11.     Reasonable administrative fees for administering and terminating the Plans (excluding record keeping fees for CitiStreet) for the entire period from November 2002 until termination should not have exceeded $35,000. *Jones Aff.*, ¶¶ 10 & 11. As such, the $358,871.41 incurred by the Plan **in 2004 alone** exceeded reasonable fees by at least $325,000. *Jones Aff.*, ¶ 10. It

appears the over $700,000 in unreasonable fees have been taken from the Plans since Anthony Scialabba became trustee in January 2003. *Id.*

12. The Participant Plaintiffs filed suit in United States District Court for the District of Massachusetts on February 23, 2005.

13. On July 12, 2005, Judge Gertner entered a preliminary injunction in the Massachusetts action. (Copy attached as Exhibit 3).

14. On July 13, 2005, Judge Gertner also denied the motion of Defendant Anthony L. Scialabba and Anthony L. Scialabba and Associates P.C. to dismiss for lack of personal jurisdiction or to transfer to New Jersey pursuant to 28 U.S.C. § 1404.

15. On July 22, 2005, the Department of Labor filed an action in New Jersey.

## Argument

I. **THERE IS NO NEED TO TRANSFER AND CONSOLIDATE THE MASSACHUSETTS AND NEW JERSEY ACTIONS**

Because there are only two pending actions, the parties would be able to cooperatively, and with the assistance of the involved district courts if necessary, coordinate discovery in this action. Parties and witnesses would need only be deposed once for both actions. As such, there is no need to transfer these relatively uncomplicated ERISA actions.

II. **SHOULD THE PANEL TRANSFER AND CONSOLIDATE THESE ACTIONS, MASSACHUSETTS WOULD BE THE APPROPRIATE FORUM.**

The Massachusetts action is the first filed by a substantial period of time. Substantive proceedings have occurred in Massachusetts including issuance of a preliminary injunction, a

FRCP Rule 16 Scheduling Conference and dispatch of the parties to court-sponsored mediation.

Moreover, the a great many of the Participant Plaintiffs in this action, including all of the named plaintiffs, live and work in Massachusetts. One of the Defendants, CitiStreet, is located here. The other defendants dealt with numerous Massachusetts Plan participants and directed numerous letters and telephone communications to this forum.

Transfer to New Jersey, where the Participant Plaintiffs lack counsel, would be extremely burdensome to the Participant Plaintiffs, a number of whom will testify as witnesses in this action. Moreover, transfer would frustrate the choice of forum of these ERISA beneficiaries. These considerations counsel a denial of the request for transfer to New Jersey. Courts have been sensitive to the legislative policy that ERISA beneficiaries should have access to local courts to vindicate their ERISA rights. In the analogous context of a Section 1404 request for transfer, a court noted:

> The moving party bears the heavy burden of establishing that the transfer to another district is proper and must overcome the considerable weight the court give to a plaintiff's choice of forum. **This is especially true with respect to ERISA actions**, because Congress' intent in drafting ERISA's liberal venue provision was to expand an ERISA plaintiff's choice of forum and limit the forum choice of corporate fiduciaries.

Vartanian v. Monsanto Co., 880 F.Supp. 63, 73 (D. Mass. 1995)(denying transfer and noting "the cost and burden to [plaintiff], an individual retiree would be considerable. Taking into account the financial means possessed by the respective parties, a transfer would be far more burdensome to the plaintiff than retaining the case will be for defendant" )(emphasis supplied); *see also* Berrigan v. Greyhound Lines, Inc. 560 F. Supp. 165, 169 (D. Mass. 1982)(denying request for transfer noting "A factor entitled to great weight is the plaintiff's choice of forum . . . The burden is on the defendant to show that a transfer is warranted. . . It is not enough, without more,

that the claim arose elsewhere or that defendants would prefer another forum. Nor should a transfer be ordered if the result is merely to shift the inconvenience to the plaintiff."); Cole v. Central States, 225 F.Supp.2d 96, 99 (D. Mass. 2002)(denying request for transfer in ERISA action); Cole v. Central States, 227 F.Supp. 2d 190, 199 (D.Mass. 2002)(same).

## Conclusion

For the foregoing reasons, the Participant Plaintiffs respectfully request that the Panel deny the request for consolidation and transfer. Alternatively, the Participant Plaintiffs request that the Panel designate the District of Massachusetts as the transferee district and forum for these actions.

MARY DESMOND, THOMAS ZIOBROWSKI, PAUL WATTS, individually and on behalf of Participants in the Standard Automotive Corp. 401(k) Plan

By their attorneys,

_____
Thomas P. Smith (BBO #555513)
Matthew A. Caffrey (BBO #558901)
CAFFREY & SMITH, P.C.
300 Essex Street
Lawrence, MA 01840
Telephone: (978) 686-6151
Telecopy: (978) 686-3399

Dated: January 12, 2006

EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARY DESMOND, THOMAS ZIOBROWSKI, )
PAUL WATTS on their own behalf and on )
behalf of other participants in the defendant ERISA )
Plans )
)
      **Plaintiffs,** )
)
    v. ) Civil Action No. _____
)
MORTON C. BATT, ANTHONY L. SCIALABBA,)
CITISTREET, LLC, WHITE & WILLIAMS, LLP, )
SCIALABBA & MORRISON, P.C., )
ANTHONY L. SCIALABBA & ASSOCIATES, )
P.C. )
THE STANDARD AUTOMOTIVE 401(K) PLAN,)
THE STANDARD AUTOMOTIVE EMPLOYER )
CONTRIBUTION PLAN, )
      **Defendants.** )
)

### AFFIDAVIT OF MARY DESMOND

I, Mary Desmond, depose and state as follows:

1. I reside at 124 Lincoln Avenue, Winchendon, Massachusetts. I make this affidavit upon personal knowledge and in support of Plaintiffs' Motions for a Preliminary Injunction and for Expedited Discovery.

2. Since June, 1998, I have been employed at a facility located in Westminster, Massachusetts that specializes in the fabrication and machining of large metal constructs for industry, defense and aerospace applications. I have held the positions of accountant, controller and, now, chief financial officer, at the facility. During that time, the facility has had between 100 and 150 employees. Three corporate entities have owned the facility. Prior to 1998, the facility was owned by Ranor, Incorporated ("Old Ranor"). Old Ranor maintained a 401(k)

savings plan for its employees.

3. On or about June, 1999, the facility was sold to Standard Automotive Corporation. Most employees of Old Ranor, myself included, "rolled over" our Old Ranor 401(k) account balances into Standard Automotive Corporation's 401(k) Savings Plan (the "Plan").

4. On or about March, 2002, Standard Automotive Corporation filed for bankruptcy protection. Then, on August 7, 2002, the facility was sold with bankruptcy court approval to Ranor, Inc. ("New Ranor"). As of August 7, 2002, the employees at the facility ceased being employees of Standard Automotive Corporation and became employees of New Ranor.

5. New Ranor set up a 401(k) savings plan for employees and on about November 18, 2002 (some twenty-eight months ago), I sent to the Plan's then administrator properly executed distribution forms for about fifty-seven (57) Plan participants requesting that their saving account balances be "rolled over" into the New Ranor 401(k) Plan. I then began a series of communications through November 2002, December 2002 and January 2003 attempting to determine the status of the transfer request and the reason for the delay. Attached as Exhibit 1 hereto are true and correct copies of e-mails I sent and received. To this day, Plan participants have not been permitted to roll over our account balances.

6. I was informed that the new trustee was Anthony L. Scialabba. I sent Mr. Scialabba an e-mail on January 2, 2003 informing him of the transfer request and requesting an update. A true and correct copy of the e-mail is attached as Exhibit 2. Mr. Scialabba was very unresponsive to my inquiries, and most of my phone messages to him went unreturned.

7. On or about January 17, 2003, I received a copy of the letter attached as Exhibit 3

informing me that Mr. Scialabba's firm was counsel to the Plan and was working on terminating the Plan and distributing assets.

8. On or about March 5, 2003, I received a memorandum from Mr. Scialabba indicating that he was trustee and plan administrator of the Plan. A true and correct copy is attached as Exhibit 4.

9. I and other concerned employees of New Ranor formed a committee to deal with the unexplained delay in the distribution of our funds. On or about March 28, 2003, Paul Watts, a member of the committee, sent a certified letter to Mr. Scialabba requesting certain information. A true and correct copy is attached as Exhibit 5. Mr. Scialabba never made any satisfactory response to this inquiry.

10. Mr. Scialabba, and an associate in his office named Noelle White did contact me because on the issue of 401(k) loan balances that were outstanding to Plan participants. They said that these loans be repaid immediately to the Plan or that Plan participants with loans would have "deemed income." The involved participants repaid these loans (totaling some $72,843) on April 1, 2003. A true and correct copy of the repayment instructions are attached as Exhibit 6.

11. On or about April 2003, after receiving our 401(k) statements for the first quarter 2003 indicating that almost 10% of participant's 401(k) balances had been deducted for fees, I called Mr. Scialabba's office to speak with him regarding the large deduction. In response, I received a letter from him on or about May 1, 2003. A true and correct copy is attached hereto as Exhibit 7. I responded to this letter by e-mail dated May 2, 2003, but never received the detailed information I requested. A true and correct copy of the e-mail is attached hereto as Exhibit 8.

12. On or about February 27, 2004, I received a memorandum from Morton C. Batt

- 3 -

indicating that he had been appointed to act as trustee and plan administrator of the Plan as of December 9, 2003. A true and correct copy of the memorandum is attached hereto as Exhibit 9. I am unaware of who Mr. Batt is, or what his qualifications are to act as a plan administrator.

13. On or about April 2, 2004, I received another memorandum from Mr. Batt to Plan participants. A true and correct copy of the memorandum is attached hereto as Exhibit 10. On or about June 28, 2004, I received another memorandum from Mr. Batt to Plan participants. A true and correct copy of the memorandum is attached as Exhibit 11.

14. On or about October 6, 2004, Tom Ziobrowski (another member of the committee of New Ranor employees) received a fax from Mr. Batt. A true and correct copy of the letter is attached as Exhibit 12.

15. On or about November 24, 2004, I received another memorandum from Mr. Batt to Plan participants. A true and correct copy of the memorandum is attached as Exhibit 13.

16. I attach true and correct copies of my quarterly statements received from the Plan since January 1, 2003 as Exhibit 14. These statements illustrate that the following percentages of my 401(k) Plan account have been deducted for fees in each of the following quarters:

| Quarter ending | Percentage of 401(k) account taken as fees |
|---|---|
| 3/31/2003 | 9.73% |
| 6/30/2003 | 3.26% |
| 9/30/2003 | .21% |
| 12/31/2003 | 3.75% |
| 3/31/2004 | 3.25% |
| 6/30/2004 | 3.61% |
| 9/30/2004 | 3.09% |
| 12/31/2004 | 7.03% |
| Total | 33.93% |

Looked at another way, my starting 401(k) balance on January 1, 2003 was $11,697.40. From

CAFFREY & SMITH, P.C.   Fax:978-683-3399   Feb 22 2005 11:44   P.06

that, $3,631.34 - or 31% --has been deducted for administrative expenses. A review of the account statements of various other Plan participants demonstrates that similar percentages have been withdrawn.

17. Based on information received from CitiStreet, the Plan had a balance of approximately $2,300,000 in January 2003. Thus, it appears that over $700,000 have been withdrawn from the Plan for administrative fees in just two years without any benefit having been conferred on me or the other Plan participants.

18. On January 21, 2004, Tom Ziobrowski, Paul Watts and I sent an e-mail to Morton Batt requesting an explanation of fees and expenses. Mr. Batt did not respond to all of our questions but he did indicate that the following amounts were paid from the Plan during 2004 alone: $256,933.21 to Anthony L. Scialabba and Associates (the firm of the former trustee); $75,000 to White & Williams; $23,286.70 to Morton Batt. A true and correct copy of the e-mail is attached as Exhibit 15.

19. I, and the other Plan participants, rely on the 401(k) Plan accounts for retirement security. We will suffer irreparable harm should the trustees and those acting with them be permitted to continue treating our retirement savings in the fashion they have for over two years.

Signed under the penalties of perjury on this 22 day of February, 2005.

_Mary Desmond_
Mary Desmond

EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY DESMOND, THOMAS ZIOBROWSKI, PAUL WATTS on their own behalf and on behalf of other participants in the defendant ERISA Plans,<br><br>**Plaintiffs**,<br><br>v.<br><br>MORTON C. BATT, ANTHONY L. SCIALABBA, CITISTREET, LLC, WHITE & WILLIAMS, LLP, SCIALABBA & MORRISON, P.C., ANTHONY L. SCILABBA & ASSOCIATES, P.C. THE STANDARD AUTOMOTIVE 401(K) PLAN, THE STANDARD AUTOMTIVE EMPLOYER CONTRIBUTION PLAN,<br>**Defendants**. | Civil Action No. _____ |

### AFFIDAVIT OF W. TERENCE JONES IN SUPPORT OF PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF

I, W. Terence Jones declare as follows:

1. I am a member of the law firm of Maselan & Jones, P.C., which maintains offices at One International Place, Boston, Massachusetts 02110.

2. I am a member of the Bars of the Supreme Judicial Court of the Commonwealth of Massachusetts, the State of Rhode Island and the State of Georgia, the United States Tax Court and the United States Bankruptcy Court, and I am in good standing with respect to each of the foregoing.

3. I hold a B.A from Yale College, a J.D. *cum laude* from Boston University School of Law, and a LL.M. (Taxation) from Boston University School of Law, and I have practiced law for more than twenty-eight (28) years.

4. During my practice, I have served as employee benefits counsel for many companies which sponsor pension and profit sharing plans, including Section 401(k) plans.

5. I have served as an expert witness in Federal District Court in employee benefits matters.

6. I have also served as counsel to many companies seeking to terminate one or more pension or profit sharing plans.

7. I am also familiar with the process of administering pension and profit sharing plans, including participant accounting and reporting and disclosure, and preparation and filing of Internal Revenue Service Forms 5500.

8. I am familiar with a plan known as the Standard Automotive Corporation 401(k) Plan (the "Plan"), and I have reviewed the Plan document and Summary Plan Description, and other background materials, including correspondence from the Plan's trustee and plan administrator, Anthony Scialabba and his successor, Morton C. Batt to Plan participants concerning the termination of Plan and the steps leading up to the termination of the Plan, and I have spoken with Plan participants and their representatives.

9. On the basis of my review and my prior experience, I believe that a reasonable amount of time to complete the process of terminating the Plan, filing a Request for Determination with the Internal Revenue Service and obtaining a Favorable Determination Letter from the Internal Revenue Service, should take in neighborhood of six (6) months and in any event should not exceed fifteen (15) months from date of commencement of services.

10. On the basis of my review and my prior experience, I believe that reasonable fees for the following services provided to the Plan would be not more than the following amounts:

   a. Annual trustee fees not involving investment management -- $2500 per year;

   b. Plan Administrator services not involving record keeping -- $2500 per year;

   c. Legal fees involving continued operation of Plan during shutdown of Plan, including preparation of Internal Service Form 5500 -- $5000 per year; and

   d. Legal fees in connection with termination of Plan – not to exceed $10,000; and

   e. Record keeper and prototype sponsor fees – not to exceed $5000 per year.

   Because ERISA is a federal law, the market for ERISA services is nationwide. A prudent trustee would be able to obtain the above services for an ERISA plan at these rates (or less) by a simple process of seeking comparative rates from the many existing service providers.

11. On the basis of the above estimates, I believe that reasonable aggregate fees incurred by the Plan for services rendered during the period from November, 2002, to the present time would not exceed $35,000 for categories a through d, and $15,000 for category e.

12. Based on my review of the items in paragraph 6 of this Affidavit, I believe that the fees which have been charged against the Plan since on or about November, 2002 are excessive and do not meet the standard in Section 404(a)(1)(A)(ii) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), as enunciated by the U.S. Department of Labor in DOL Advisory Opinions 97-03A, January 23, 1997, and ERISA Opinion Letter No. 2001-01A, January 18, 2001.

13. In my opinion, the $358,871.41 in administrative fees incurred by the plan in 2004 alone exceed reasonable fees for that period by at least $325,000 and the $800,000 in estimated

3

administrative fees incurred since November 2002 exceed reasonable fees by at least $750,000.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of February, 2005.

W. Terence Jones (BBO # 254200)
MASELAN & JONES, P.C.
One International Place
Boston, MA 02110
Tel: (617) 451-1500
Fax: (617) 451-5174
Email: tjones@maselanjones.com

4

EXHIBIT 3

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MARY DESMOND, THOMAS ZIOBROWSKI, )
PAUL WATTS on their own behalf and on )
behalf of other participants in the defendant ERISA )
Plans )
        **Plaintiffs,** )
        v. )   Civil Action No. 05-cv-10355 NG
)
MORTON C. BATT, ANTHONY L. SCIALABBA,)
CITISTREET, LLC, WHITE & WILLIAMS, LLP, )
SCIALABBA & MORRISON, P.C., )
ANTHONY L. SCIALABBA & ASSOCIATES, )
P.C. )
THE STANDARD AUTOMOTIVE 401(K) PLAN,)
THE STANDARD AUTOMOTIVE EMPLOYER )
CONTRIBUTION PLAN, )
        **Defendants.** )

---

## PRELIMINARY INJUNCTION

Upon application of the Plaintiffs, and after hearing and stipulation by the defendants, it is hereby ORDERED that:

1. Defendants, and those in active concert with them, are hereby restrained and prevented from taking or permitting any deductions or withdrawals from the Standard Automotive 401(k) Plan or the Standard Automotive Employer Contribution Plan to pay any expenses, whether characterized as "administrative expenses" or otherwise, without the written agreement of Plaintiffs (through counsel) or further order of this Court.

Date: 7/13/2005

_____
(Gertner, District Judge)