UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY DESMOND, THOMAS ZIOBROWSKI, PAUL WATTS on their own behalf and on behalf of other participants in the defendant ERISA Plans<br>**Plaintiffs**,<br><br>v.<br><br>MORTON C. BATT, ANTHONY L. SCIALABBA, CITISTREET, LLC,<br>SCIALABBA & MORRISON, P.C.,<br><br>ANTHONY L. SCIALABBA & ASSOCIATES, P.C.<br>THE STANDARD AUTOMOTIVE 401(K) PLAN, THE STANDARD AUTOMOTIVE EMPLOYER CONTRIBUTION PLAN,<br>**Defendants**.<br><br>ELAINE L. CHAO, Secretary of Labor, United States Department of Labor,<br>**Plaintiff**,<br><br>v.<br><br>MORTON BATT, JOHN E. ELLIOTT II, ANTHONY L. SCIALABBA, and the THE STANDARD AUTOMOTIVE 401(K) PLAN<br>**Defendants/Third Party Plaintiffs**<br><br>v.<br><br>CITISTREET, LLC,<br>**Third Party Defendant** | Civil Action No. 05-cv-10355 NG |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR APPOINTMENT OF INDEPENDENT TRUSTEE**

Plaintiffs Mary Desmond, Thomas Ziobrowski, and Paul Watts, on their own behalf and on behalf of other participants in the Standard Automotive 401(k) Plan (the "Plan"), respectfully submit this memorandum in support of their request that the Court appoint Jacqueline M. Carmichael as an independent fiduciary to administer and terminate the Plan.

### Factual Background

1.	The Plaintiffs became participants in the Plan when their company in Westminster, Massachusetts was sold to Standard Automotive Corporation in 1999. Most employees of the Company "rolled over" their 401(k) account balances into Standard Automotive Corporation's 401(k) Savings Plan (the "Plan"). Affidavit of Mary Desmond dated February 22, 2005 ( Docket No. 5, hereinafter "Desmond Aff."), ¶ 2, 3

2.	On or about March, 2002, Standard Automotive Corporation filed for bankruptcy protection. As of August 7, 2002, plaintiffs ceased being employees of Standard Automotive Corporation and became employees of Ranor. Desmond Aff., ¶ 4.

3.	In the fall of 2002, Plaintiffs sought to "roll over" their 401(k) accounts from the Plan to a new plan, but have been unable to do so to the present time. Desmond Aff., ¶ 5 & Exhibit 1

4.	In or about January 2003, defendant Anthony L. Scialabba announced to the Plan participants that he was the new Plan administrator and trustee and would expeditiously move to terminate the Plan and make distributions. Desmond Aff., ¶ 6-8 & Exhibits 2-4. Plan participants became concerned with Defendant Scialabba's long delay and formed a committee to request information from Defendant Scialabba. Defendant Scialabba did not adequately respond to their requests for information, delay continued and substantial amounts began to be

deducted from Participants retirement savings accounts.  Desmond Aff., ¶¶ 9-11 & Exhibits 5-8.  On or about February 27, 2004, Plan participants received a memorandum from Morton C. Batt indicating that he had been appointed to act as trustee and plan administrator of the Plan as of December 9, 2003.   Plan participants were unaware of who Mr. Batt is, or what his qualifications are to act as a plan administrator.    Mr. Batt failed to terminate or distribute assets from the Plan in a timely or efficient manner.  Desmond Aff., ¶¶ 12-15 and Exhibits 9-13.

5. During the tenure of Defendants Scialabba and Batt 401(k) assets were substantially dissipated – by as much as one third -- by the payment of substantial fees by Scialabba and Batt.  Many of these fees were paid to Defendant Scialabba.  Desmond Aff. ¶ 16 & Exhibit 14.  It appears that over $700,000 has been withdrawn from the Plan for administrative fees paid to Defendant Scialabba and others without any benefit having been conferred on Plan participants.  Desmond Aff., ¶¶ 17-18 &  Exhibit 15.  Accordingly, Plaintiffs filed suit in February 2005.

6. Plaintiff's have submitted expert testimony that termination of the Plan and distribution of all Plan assets should have taken approximately six (6) months from September 2002 .  Affidavit of W. Terrence Jones, Esq. dated February 22, 2005, (Docket No. 4, hereinafter "Jones Aff."), ¶ 9.  Reasonable administrative fees for administering and  terminating the Plans (excluding record keeping fees for CitiStreet)  should not have exceeded $35,000.  Jones Aff., ¶¶ 10 & 11.

7. Plaintiffs, with the assistance of the Department of Labor, have identified a skilled and experienced independent trustee, Jacqueline M. Carmichael, who would be able to administer and terminate the Plan in an expeditious manner.   Ms. Carmichael has submitted a

resume and fee schedule (attached).   Ms. Carmichael has also provided a preliminary estimate indicating that she would be able to terminate the Plan and distribute its assets for approximately $38,100.   The detailed estimate includes: Takeover Fee ($3,000); Restatement of Plan Document ($1,500); Plan Administration for one year ($3,600); Participant Charge for one year ($8,750 based on 350 participants); Benefit Adjudication processing ($17,500); and Management Fee ($3,750).

### Argument

ERISA provided this Court with equitable power to remove and appoint the fiduciaries of ERISA plans.   See ERISA Section 409, 29 U.S.C. § 1109 (ERISA fiduciaries "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary").   The Plaintiffs have requested such relief in this action.

In this case, Plaintiffs and the participants they represent, have been denied access to their 401(k) retirement savings for over four years.   Meanwhile -- prior to the institution of this litigation and the intervention of this Court -- these retirement funds were dissipated and wasted by Defendants Scialabba and Batt.   Some participants in the Plan have retired and cannot access funds they need to support themselves in retirement.

The Court should use the equitable power conferred by Congress in ERISA to aid these Plan participants by appointing a skilled and experienced ERISA fiduciary who has provided a detailed and reasonable estimate of the cost of her work.   This Independent Fiduciary will be able to provide participants with access to their funds in a timely and professional manner.

### Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court allow the Motion to Appoint an Independent Fiduciary.

PLAINTIFFS MARY DESMOND, THOMAS ZIOBROWSKI, and
PAUL WATTS, individually and as representatives of all Plan participants,

By their attorneys,

 /s/ Thomas P. Smith
Thomas P. Smith (BBO #555513)
Matthew A. Caffrey (BBO #558901)
 CAFFREY & SMITH, P.C.
 300 Essex Street
 Lawrence, MA 01840
 Telephone: (978) 686-6151
 Telecopy: (978) 686-3399

Certificate of Service

I, Thomas P. Smith, hereby certify that I served a true copy of the foregoing document, upon the other parties of record on November 17, 2006 as indicate below:

Joseph Buttafuoco, Esq.
2509 Park Avenue, Suite 1C
South Plainfield, NJ 07080 (By Mail)

Henry C. Dinger, Esq.
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109 (By ECF)

Arthur D. Goldman, Esq.
P.O. Box 115
Paoli, PA 19301 (By Mail)

Ronald M. Jacobs, Esq.
Conn, Kavanaugh
Ten Post Office Square
4th Floor
Boston, MA 02109 (By ECF)

Michael O. Kassak, Esq.
White & Williams, LLP

Liberty View
457 Haddonfield Road, Suite 400
Cherry Hill, NH 08002  (By ECF)

William J. Murray, Jr., Esq.
Vaira & Riley, P.C.
1600 Market Street, Suite 2650
Philadelphia, PA 19103  (By Mail)

Jennifer D. Weekley, Esq.
U.S. Department of Labor
201 Varick Street, Room 983
New York, NY 10014  (By Mail)

           /s/  Thomas P. Smith
          Thomas P. Smith

Statement of Work for the
Termination of Standard Automotive 401(k) Plan
And Distribution of Plan Assets

1. Review existing plan information such as administrative reports, asset valuation, transactions, tax return and plan document
2. Restate the plan document to be in full compliance with recent tax law changes (namely GUST and EGTRRA)
3. Marshall the plan assets and maintain plan records
4. Administration and valuation of plan assets to date (from date of last known reconciled report to present)
5. Preparation and filing of Form 5500 for outstanding years as required by Chief Accountant, Department of Labor
6. Preparation and filing of Form 5330 for excise taxes levied, if applicable
7. Preparation and adoption of required resolutions and participant notification via first class mail to terminate the plan
8. Locate all plan participants and beneficiaries
9. Claim adjudication and distribution of plan assets pursuant to participant's instructions
10. Preparation and filing of Forms 1099 and 945

JACQUELINE M. CARMICHAEL
JM PENSION ADVISORY, INC.
15807 CRABBS BRANCH WAY, SUITE B
DERWOOD, MARYLAND   20855
301/417-0099

**RELATED PENSION EXPERIENCE**

1995 - Present     ***JM Pension Advisory, Inc.***
Founder, President and sole shareholder of this pension consulting and administration firm.  (In 1995, Carmichael Hill was split into two entities – Carmichael Hill and JM Pension).  In addition to the services mentioned below, became more active in pension consulting for "troubled" plans, generally involving IRS or DOL intervention.

1987-1995          ***Carmichael Hill & Associates, Inc.***
Co-Founder and Vice President of this registered investment advisory and pension administration firm.  Responsible for the design, administration and government reporting of over 100 Defined Benefit and Defined Contribution plans.  Also involved in establishing appropriate procedures for allocating participant-directed plans.  Wrote investment policy statements for plans.  Performed due diligence and reconciled either trustee reports for plans when trustees were changed or record-keeper reports when custodian of funds were changed.  Coordinated activities and specific issues with plans' ERISA attorneys, corporate attorneys, CPAs, and auditors as needed.

1983-1987          ***Benefit Planning Services***
Supported two partners in various benefit and financial planning for individuals and companies.  This involved feasibility studies for establishing qualified retirement plans, calculating minimum required distributions, quantifying tax implications of distributions from qualified retirement plans

**EDUCATION**

· Graduated 1980 from George Washington University, B.B.A. degree
· Qualified Plan Administrator, designation by American Society of Pension Professionals & Actuaries, earned 1992
· Qualified 401(k) Administrator, designation by American Society of Pension Professionals & Actuaries, earned 2001

**ADDITIONAL INFORMATION**

- Teach continuing education classes for CPAs on qualified retirement plans, completing the 5500 form, tax law changes affecting qualified retirement plans and auditing qualified retirement plans.

- A member in good standing of the American Society of Pension Professionals & Actuaries

- Extensive experience with Internal Revenue Service in self-audit applications such as VCR and Walk-In CAP resulting in reduced penalties assessed to the plan sponsor and maintenance of plan's tax-qualified status.

- Successfully obtained Internal Revenue Service favorable determination letters on all terminating plans (defined benefit and defined contribution plans) submitted.

- Successfully obtained Internal Revenue Service "clean audit" reports during routine audits of clients' Forms 5500 (annual tax return).

- Coordinated and assisted the Department of Labor in its audit of a well-known firm in Pittsburgh, PA when I discovered the Trustee had taken funds from the plan's profit sharing plan for his own personal use.

- Coordinated and assisted the Department of Labor in its audit of several 401k plans that reported delinquent funding of participant money.

- Serve(d) as Independent Fiduciary on over forty "orphan" or troubled ERISA plans pursuant to US District Court appointments in the states of Virginia, New Jersey and New York.

- Serve(d) as Independent Fiduciary on over forty "orphan" or troubled ERISA plans investigated by the Department of Labor, appointed voluntarily by the incumbent Trustee or Bankruptcy Trustee.

# JM PENSION ADVISORY
# FEE SCHEDULE
# EFFECTIVE JAN 1 2006

| INITIAL CHARGES | |
|---|---|
| Document/Installation Fee | From $1200 |
| Take Over Fee | Negotiable |

| BASE ADMINISTRATIVE FEES | |
|---|---|
| For Plans with 10 - 99 Participants | |
|     Defined Benefit | $2,500 |
|     Profit Sharing/Pension | $1,200 |
|     401k | $1,800 |
| *For Plans with < 10 Participants* | *Call for Quote* |
| *For Plans with >= 100 Participants* | *Call for Quote* |

| PER PARTICIPANT/PER VAL FEES | |
|---|---|
|     Annual Valuation | $25 |
|     Semi-Annual Valuation | $15 |
|     Quarterly Valuation | $12 |

| MISCELLANEOUS | |
|---|---|
| Group Based or Age Weighted Alloc | $1,200 |
| Loan Set Up/Annual Fee | $45 / $50 |
| Distribution Fee | $50 |

| CONSULTING | $150/hr |
|---|---|